168 Cal.App.4th 43 (2008)
In re J.L., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
J.L., Defendant and Appellant.
No. H032639.
Court of Appeals of California, Sixth District.
October 16, 2008.
*46 Carl A. Gonser, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmond G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Michael E. Banister, Deputy Attorney General, for Plaintiff and Respondent.

*47 OPINION
BAMATTRE-MANOUKIAN, Acting P. J.
The minor, J.L., appeals from the dispositional order committing him to the Division of Juvenile Justice (DJJ)[1] after he admitted violating probation by failing to return to placement, as alleged in an August 22, 2006 notice pursuant to Welfare and Institutions Code section 777.[2] On appeal, the minor contends that section 733, subdivision (c), bars the juvenile court from committing him to the DJJ. Relevant here, section 733, subdivision (c), precludes the court from committing a minor to the DJJ unless, among other things, "the most recent offense alleged in any petition and admitted or found to be true by the court" is an offense described in section 707, subdivision (b). The minor argues that the "most recent offenses" admitted and found to be truean attempted second degree robbery alleged in a December 15, 2006 petition under section 602, and the probation violation alleged in the August 22, 2006 notice under section 777were "non-707(b) offenses" and, therefore, section 733 precludes his DJJ commitment. The minor also contends that an assault alleged in an earlier March 14, 2006 petition, which the juvenile court relied upon as the "most recent offense" under section 733, subdivision (c), in committing him to the DJJ, is not one of the offenses listed in section 707, subdivision (b), and thus he could not be committed to the DJJ based on that petition.
As we will explain, because the assault alleged in the March 14, 2006 petition is "the most recent offense alleged in any petition and admitted or found to be true by the court" and is an offense described in section 707, subdivision (b), the juvenile court was not precluded by section 733, subdivision (c), from committing the minor to the DJJ. Accordingly, we will affirm the dispositional order.

BACKGROUND

April 11, 2003 Petition
On April 11, 2003, a petition under section 602 was filed against the minor, who was then 14 years old, alleging that he committed three counts of *48 misdemeanor petty theft (Pen. Code, §§ 484, 488). The court subsequently found the allegations true. On May 14, 2003, the court adjudged the minor to be a ward of the court and committed him to juvenile hall for 60 days, with the commitment to be served entirely on the electronic monitor program. Upon successful completion of the commitment, the minor was to be returned to the custody of his parents on probation with various terms and conditions.

March 3, 2004 Notice
On March 3, 2004, a notice under section 777 was filed, alleging that the minor violated court orders by failing to attend school on a regular basis, failing to abide by the laws of the community, violating his curfew on multiple occasions, failing to abide by the rules of his mother's home, displaying gang indicia, and ingesting illegal drugs. On March 19, 2004, the minor admitted the allegations. The court continued the minor as a ward of the court and ordered him to serve 60 days on the electronic monitor program. The minor was to be returned to the custody of his parents on continued probation.

May 14, 2004 Notice
On May 14, 2004, a notice under section 777 was filed, alleging that the minor violated court orders by failing to attend school on a regular basis, violating curfew, absconding from probation as of May 11, 2004, failing to abide by the rules of his mother's home, and cutting off his electronic monitor. On August 13, 2004, the minor admitted the allegations.
On October 4, 2004, the court continued the minor as a ward of the court; committed him to the care, custody, and control of the probation officer for placement in a suitable relative home, foster home, or private institutional placement under the supervision of the probation officer; ordered that he obey all rules and regulations of the facility; and ordered his continued detention in juvenile hall pending placement, among other orders.
On November 1, 2004, the court released the minor and placed him on electronic monitoring.

March 30, 2005 Petition
The probation department filed a report on January 7, 2005, stating that the minor violated curfew several times; left the family home on January 2, 2005, *49 and failed to return; and "damaged his EMP box by throwing it against the wall, causing it to crack."
On March 30, 2005, a petition under section 602 was filed against the minor, alleging that he committed felony vandalism (Pen. Code, § 594) by damaging and destroying the "EMP Box." On April 12, 2005, the minor admitted the allegations. The juvenile court continued the minor as a ward of the court and ordered that he remain in juvenile hall pending placement, among other orders. At a subsequent hearing, the court ordered that the minor continue under the care, custody, and control of the probation officer for placement in a suitable relative home, foster home, or private institutional placement under the supervision of the probation officer. On July 14, 2005, the minor was placed at Starlight Adolescent Center.

October 18, 2005 Notice, January 5, 2006 Petition, and March 14, 2006 Petition
On October 18, 2005, a notice under section 777 was filed, alleging that the minor left his court-ordered placement on October 15, 2005, and failed to return. The notice further stated that the minor's "current whereabouts are unknown."
On January 5, 2006, a petition under section 602 was filed against the minor. The petition alleged that on or about January 4, 2006, the minor committed felony theft or unauthorized use of a vehicle (Veh. Code, § 10851, subd. (a)).
On March 14, 2006, a petition under section 602 was filed against the minor, alleging that on or about February 19, 2006, he committed an assault in violation of Penal Code section 245, subdivision (a)(1).
On May 2, 2006, the minor admitted the allegations in the October 18, 2005 notice, the January 5, 2006 petition, and the March 14, 2006 petition. The juvenile court continued the minor as a ward of the court, among other orders. The court subsequently approved the minor's continued placement at Starlight Adolescent Center, and on July 6, 2006, the minor was placed at the center.

August 22, 2006 Notice and December 15, 2006 Petition
On August 22, 2006, a notice under section 777 was filed, alleging that the minor failed to return to Starlight Adolescent Center on August 19, 2006, *50 after a day-home pass had expired. The notice further stated that "[t]he minor's current whereabouts are unknown."
On December 15, 2006, a petition under section 602 was filed against the minor, alleging two counts. In count 1, the petition alleged that the minor committed an attempted second degree robbery, a felony, and that he personally used a deadly and dangerous weapon, a knife, in the commission of the offense (Pen. Code, §§ 664, 211, 212.5, subd. (c), 12022, subd. (b)(1)). In count 2, the petition alleged that the minor gave a false name to a peace officer, a misdemeanor (Pen. Code, § 148.9). The juvenile court consolidated this petition with the August 22, 2006 notice.
On May 10, 2007, the minor admitted the allegations in count 1 of the December 15, 2006 petition regarding the attempted robbery and weapon enhancement. Count 2 of the petition was dismissed. The minor also admitted the allegations in the August 22, 2006 notice regarding the violation of a prior court order.

Contested Disposition Hearing
On August 10, 2007, the juvenile court commenced the contested disposition hearing on the August 22, 2006 notice and the December 15, 2006 petition. At the hearing, the prosecutor supported the probation officer's recommendation that the minor be sent to the DJJ. The minor's counsel, seeking an alternative, acknowledged that the minor had been "turned ... down" from two organizations, but requested that the court consider "Lodge Builders." The court heard testimony from the minor's probation officer and from the minor. Upon questioning by the court, the probation officer indicated that it was "doubtful" the minor would be accepted by "Lodge Makers." The court stated: "I think in fairness we should probably have [the minor] screened by Lodge Makers. But I will tell you that if he is not accepted by Lodge Makers, I frankly don't see that I'm going to have much choice but to send him to [the DJJ]. I've heard everything today, but I'm not willing to simply release him into the community into programs." The court continued the hearing so that the minor could be screened by Lodge Makers and indicated that it wanted the parties to "then come back for an actual disposition with no further evidence."

Minor's Motion to Withdraw the Admission to the Enhancement
The clerk's minutes for the continued dispositional hearing on September 6, 2007, indicate that the minor's counsel raised the issue of the minor withdrawing his plea. Counsel was "to file [the] motion / give notice."
*51 On September 26, 2007, the minor's counsel filed a motion pursuant to Penal Code section 1018 to withdraw the minor's admission to the weapon enhancement (Pen. Code, § 12022, subd. (b)(1)) in the December 15, 2006 petition. The minor's counsel stated in a supporting declaration that the law had changed under section 733 after the minor's admission of the enhancement. Under the new law, counsel explained that if the "enhancement is found to be not true, this matter then falls under the purview of [section 733, subdivision (c)], requiring the minor not to be committed to [the DJJ]." Counsel stated that if this had been known to him at the time of the admission, he "would have requested a trial on the Penal Code § 12022(b) enhancement issue only." The prosecutor filed written opposition to the motion.
The hearing on the minor's motion to withdraw his admission was heard on October 12, 2007. The minor's counsel explained that "the [section] 12022B enhancement" was the "tipping point" under the new section 733 because the underlying offense, attempted second degree robbery, "is not one of the offenses that allows a commitment under this statute." Counsel maintained that he and the minor were unaware of the potential consequences of the minor's plea at the time it was entered. In opposition, the prosecutor argued that the motion should be denied because the court already had the discretion to place the minor wherever it deemed appropriate without the necessity of allowing the minor to withdraw his admission, there was already a recommendation by the probation officer "for the minor to go to the [DJJ]," and the court already heard evidence regarding the appropriate disposition in this matter.
After hearing argument from counsel, the court stated that it was the court's "recollection" that there were no "good alternatives" for the minor and that the "[DJJ] was the best alternative that we could find for him." The court stated that it was "not sure where we would go ... if [the DJJ was] not available." However, the court did not believe that the minor knew "at the time he entered his admission that he had a chance of not being a [section] 707[, subdivision (b),] minor by ... requesting a contested hearing on the enhancement...." Consequently, the court granted the minor's motion to set aside his plea, but only as to the weapon enhancement in the December 15, 2006 petition. The court then set the date for a contested hearing on the enhancement allegation.

People's Motion to Dismiss the December 15, 2006 Petition
On October 31, 2007, the prosecutor informed the juvenile court that he could not proceed with the contested hearing on the enhancement allegation *52 in the December 15, 2006 petition because a witness was unavailable to testify. The prosecutor sought dismissal of the December 15, 2006 petition and requested that the court proceed to disposition on the August 22, 2006 notice. The court denied the prosecutor's motion to dismiss the December 15, 2006 petition without prejudice but indicated that the parties could file briefs on the issue.

Continued Disposition Hearing
The prosecutor subsequently filed a written request to dismiss the December 15, 2006 petition, and the minor's counsel filed written opposition.
On December 4, 2007, the continued disposition hearing was held on the August 22, 2006 notice and the December 15, 2006 petition, along with the hearing on the prosecutor's request to dismiss the December 15, 2006 petition. After hearing argument from counsel, the court explained that there were "three petitions" that were pertinent in this case. One petition was the March 14, 2006 petition involving an offense under Penal Code section 245, subdivision (a)(1), which was a section 707, subdivision (b), offense, according to the court. The court noted that the minor "was sent to a placement on that ... petition" already. The court indicated that the other two "petitions" were before the court for disposition. The August 22, 2006 notice was for "a violation of probation on" the March 14, 2006 petition, and the December 15, 2006 petition involved an attempted robbery with an enhancement. The court explained that the minor originally admitted the enhancement "and as originally admitted [the offense] was a [section] 707[, subdivision (b),] offense and then this Court set aside the enhancement, which took it out of being a [section] 707[, subdivision (b),] offense." The court recognized that section 733 precluded it from sending the minor to the DJJ unless the most recent offense was a section 707, subdivision (b), offense, and stated: "as it stands right now, I can't send him to [the DJJ] on the [December 15, 2006] petition."
The court explained that it had tried, and probation had tried, to find alternative placements for the minor, but "he is not qualified for any alternative placements." The court indicated that it had asked for the minor to be screened for a placement in Southern California, but the minor was too old and the facility "is in fact, now closed." The court explained: "the district attorney is using [section] 782[[3]] to ask me to dismiss the [December 15, *53 2006] petition so that I can send him to [the DJJ] on [the August 22, 2006 notice], which is a violation of probation on [the March 14, 2006 petition,] [w]hich is a [section] 707[, subdivision (b), offense].... [Section] 782 allows the Court to dismiss the petition or set aside its findings and dismiss the petition if the Court finds that the interest of justice and the welfare of the minor require[] that dismissal. [Section 782 also allows dismissal] ... if [the Court] finds the minor is not in need of treatment or rehabilitation and that's not a finding that I could make in this case. [¶] It appears to me that [the minor] is in need of rehabilitation and so the question is whether I can find that the interest of justice and the welfare of the minor require dismissal of the [December 15, 2006] petition. And I will say my first inclination was to say the district attorney can't do this; the D.A. can't move to dismiss the [December 15, 2006] petition because they want a harsher ... or more restrictive solution for the minor."
The court further stated: "[T]he ... question that the Court really has to address is whether under [section] 782 and new [section] 733, ... whether I can in fact dismiss the [December 15, 2006] petition and send [the minor] to [the DJJ] on the [August 22, 2006 notice]. [¶] And the probation report and the testimony that I've already had at disposition leave me to believe that I really don't have any other choices for [the minor].... [T]here is no alternative placement that I can send him to.... [N]one of the alternative[s] that I have are in the interest of justice or help the welfare of this minor."
The court concluded "for those reasons," it would dismiss the December 15, 2006 petition alleging the attempted robbery and send the minor to the DJJ on the August 22, 2006 notice for a probation violation. The court stated the decision was "not reached easily" but it believed "the interest of justice and the welfare of the minor require[d] that disposition." The court set aside the December 15, 2006 petition and all subsequent proceedings on the petition, including the minor's admission to the petition; dismissed the petition in the interest of justice; and ordered that the petition not be refiled. Regarding disposition of the August 22, 2006 notice, the court explained that the notice arose out of a "violation of probation" on the March 14, 2006 petition. The court indicated that the March 14, 2006 petition involved an assault under Penal Code section 245, subdivision (a)(1); the assault was a section 707, subdivision (b), offense; and in view of section 733, subdivision (c), the March 14, 2006 petition was "relevant in that it is the most *54 recent [section] 707[, subdivision (b)] offense...." The court continued the minor as a ward of the court, committed him to the DJJ, and set his maximum term of physical confinement at two years, among other orders.
On February 20, 2008, the minor filed a notice of appeal, purportedly appealing from an order made on December 28, 2007. In the notice of appeal, the minor asserted, among other things, that "the court should have been precluded from committing the minor to CYA."

DISCUSSION
As a threshold issue, the People assert that the minor's notice of appeal was not timely filed, and therefore the appeal must be dismissed. The minor previously filed a motion seeking relief from default due to his trial counsel's failure to file a timely notice of appeal. We granted the minor's motion in an order filed July 7, 2008. Therefore, we will address the substance of the appeal.
The minor contends that section 733, subdivision (c), bars the juvenile court from committing him to the DJJ. Section 733, subdivision (c), states in relevant part: "A ward of the juvenile court who meets any condition described below shall not be committed to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities: [¶] ... [¶] (c) The ward has been or is adjudged a ward of the court pursuant to Section 602, and the most recent offense alleged in any petition and admitted or found to be true by the court is not described in subdivision (b) of Section 707[[4]].... This subdivision shall be effective on and after September 1, 2007."
*55 The minor contends that only the December 15, 2006 petition and the August 22, 2006 notice were before the juvenile court for disposition at the December 4, 2007 hearing; that these filings contained the most recent offenses alleged against him that were admitted and found to be true; that neither of these filings involved a section 707, subdivision (b), offense; and that therefore section 733, subdivision (c), precludes his commitment to the DJJ. The minor also contends that the offense stated in the March 14, 2006 petition, which the juvenile court relied upon in committing him to the DJJ, is not one of the offenses listed in section 707, subdivision (b), and thus he could not be committed to the DJJ based on the March 14, 2006 petition.
Because section 733, subdivision (c), precludes DJJ commitment unless the "most recent offense alleged in any petition" (italics added) is a specified offense, we will address the minor's arguments concerning the December 15, 2006 petition first, followed by the August 22, 2006 notice, and then the March 14, 2006 petition.

The December 15, 2006 Petition
(1) In construing whether section 733, subdivision (c), precludes the minor's commitment to the DJJ, we apply the well-settled rules governing statutory construction. "We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] To determine legislative intent, we turn first, to the words of the statute, giving them their usual and ordinary meaning. [Citations.] When the language of the statute is clear, we need go no further. However, when the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]" (People v. Flores (2003) 30 Cal.4th 1059, 1063 [135 Cal.Rptr.2d 63, 69 P.3d 979].)
*56 (2) Section 733, subdivision (c), precludes a minor's commitment unless "the most recent offense alleged in any petition and admitted or found to be true by the court" is one of the specified offenses. On appeal, the minor maintains that the attempted robbery alleged in the December 15, 2006 petition "was the most recent offense admitted and found to be true" under section 733, subdivision (c), "despite the court's decision to dismiss that petition." In view of the fact that his admission to the weapon enhancement allegation was set aside and the underlying attempted robbery is not a section 707, subdivision (b), offense, the minor reasons that the juvenile court was precluded from committing him to the DJJ under section 733, subdivision (c).
We determine that because the minor's admissions to the allegations concerning the weapon enhancement and the attempted robbery were set aside, as were all subsequent proceedings on the December 15, 2006 petition containing those allegations, section 733, subdivision (c), did not preclude his DJJ commitment. Further, the December 15, 2006 petition was dismissed and the People were ordered not to refile it. Under these circumstances, the attempted robbery alleged in the December 15, 2006 petition could not have been "the most recent offense ... admitted or found to be true" by the juvenile court within the meaning of section 733, subdivision (c).
In a supplemental brief,[5] the minor argues that the "language of... section 733 only authorizes the juvenile court to commit the [minor] to DJJ when the most recent admitted and sustained petition is a 707(b) offense. The statute does not give the juvenile court authority to dismiss the admitted and sustained petition to avoid the restriction on committing [the minor] to DJJ. The clear meaning of the statuteto limit commitments to DJJ to specified offensesmust be enforced." The minor contends that "[i]f the Legislature had wanted to include this escape option of avoiding the prohibition against DJJ commitment by dismissing the latest admitted and sustained petitions," it would have included a provision for dismissal in section 733.
In response, the People contend that policy considerations support "the allowance of section 782 discretion in the context of section 733, subdivi-sion (c)...." The People contend although "juvenile courts continue to attempt to use the least restrictive option in treating a delinquent minor (see § 202, subd. (a)), there comes a point when the juvenile court may properly find that less restrictive dispositions in the past have not been *57 effective in the minor's rehabilitation." In a case such as this one, the People assert that the minor and society "benefit from a DJJ commitment." The People contend that if a juvenile court is precluded from dismissing the most recent petition alleging a non-section 707, subdivision (b), offense and from ordering DJJ commitment, the court may be reluctant to consider a disposition that is less restrictive than DJJ commitment after the minor first commits a section 707, subdivision (b), offense.
As the minor points out, section 733 does not specifically authorize the dismissal of a petition containing the most recent offense admitted or found to be true. However, section 782 does authorize the juvenile court to set aside findings and to dismiss a petition "if the court finds that the interests of justice and the welfare of the minor require such dismissal," and it was pursuant to this section that the court dismissed the December 15, 2006 petition. Because the December 15, 2006 petition was dismissed, and the minor's admission to the allegations in that petition was set aside, the offense alleged in the December 15, 2006 petition could not be considered the "most recent" offense "admitted or found to be true by the court" under section 733, subdivision (c). Therefore, the court was not precluded by the December 15, 2006 petition from committing the minor to the DJJ under section 733, subdivision (c).

The August 22, 2006 Notice
Next, the minor contends that "even if the dismissal of the [December 15, 2006 petition] meant that the attempted robbery could no longer be considered the most recent offense," he still could not be committed to the DJJ under section 733, subdivision (c). The minor maintains that "[t]he probation violation alleged in the [August 22, 2006 notice], which was the only remaining petition before the court for disposition would then become the most recent offense. Since the probation violation was not a 707(b) offense, [he] could not be committed to DJJ" under section 733, subdivision (c).
The People respond that the minor "incorrectly refers to the section 777 notice [filed on August 22, 2006] as a petition." The People maintain that the minor "refers to the allegation in the section 777 notice as an `offense' and characterizes that notice of probation violation as a `petition,' impliedly putting it in the same category as a section 602 petition alleging conduct charged as a criminal offense. The section 777 notice was not a `petition,' and it alleged absconding as a probation violation only, not as a criminal offense." Citing In re Eddie M. (2003) 31 Cal.4th 480 [3 Cal.Rptr.3d 119, 73 P.3d 1115] *58 (Eddie M.), the People assert that the California Supreme Court "repeatedly distinguished sections 602 and 777, noting that the latter no longer may be used to allege criminal conduct as a crime, but only as a probation violation...."
(3) In view of the plain language of section 733, subdivision (c), we determine that "the most recent offense" in subdivision (c) refers to an offense alleged in a petition that is filed under section 602, but not to a probation violation that is alleged in a notice filed under section 777.
Section 733, subdivision (c), specifically refers to an offense that is alleged in a "petition." As explained by the California Supreme Court, "[n]o section 602 case begins until the prosecutor files a petition under that statute on the People's behalf. (§§ 650, subd. (c), 681, subd. (a).) The petition states which penal laws were violated and whether the offenses are felonies or misdemeanors. (§§ 656, subd. (f), 656.1.)" (Eddie M., supra, 31 Cal.4th at p. 487, italics added.)
In contrast, section 777 has a "`notice' provision. (§ 777, subds. (a)(2) & (b).)[[6]]" (Eddie M., supra, 31 Cal.4th at p. 491.) The notice provision *59 replaced the "supplemental petition" that had been contemplated by the statute "[b]etween section 777's enactment in 1961, and Proposition 21's approval in 2000...." (Eddie M., supra, 31 Cal.4th at p. 489.) Our Supreme Court has explained: "In 2000, Proposition 21 changed the scope of section 777 in section 602 cases. As pertinent here, voters deleted the provision allowing prosecutors to allege probation violations amounting to crimes. Now, for wards or probationers under section 602, section 777 applies ... [to] a probation violation `not amounting to a crime.' (§ 777(a)(2).) [¶] With respect to procedural changes, Proposition 21 replaced the supplemental petition with a `notice' provision. (§ 777, subds. (a)(2) & (b).) A `preponderance of the evidence' standard now applies. (§ 777(c).) Other new language allows `reliable hearsay evidence' insofar as it would be `admissible in an adult probation revocation hearing [under] People v. Brown[, supra, 215 Cal.App.3d 452] and any other relevant provision of law.' (§ 777(c).) [Fn. omitted.]" (Eddie M., supra, 31 Cal.4th at p. 491.)
(4) The California Supreme Court has further explained that "by limiting section 777(a)(2) to matters `not amounting to ... crime[s],' Proposition 21 only affected the manner in which such violations are officially treated under the statute. Section 777(a)(2) covers all probation violations alleged as such, including those that are criminal in fact." (Eddie M., supra, 31 Cal.4th at p. 502.) Nonetheless, "juvenile probation violations, like their adult counterparts, do not involve criminal guilt. While section 777 continues to permit dispositional change for probation violations involving criminal conduct, the `not amounting to a crime' limitation precludes prosecutorial use of the statute to plead and prove the violation as a crime. Thus, unlike criminal convictions or section 602 offenses, section 777 adjudications do not entail the `stigma of a finding that [the juvenile] violated a criminal law.' ([In re] Winship [(1970)] 397 U.S. 358, 367 [25 L.Ed.2d 368, 90 S.Ct. 1068], fn. omitted.) Nor do such probation violations trigger other collateral consequences associated with convictions or section 602 adjudications. (See, e.g., Pen. Code, § 667, subd. (d)(3) [subjecting certain violent or serious § 602 wardship adjudications to `Three Strikes' law].) Because section 777 involves no formal criminal charge, the reasonable doubt standard need not constitutionally apply." (Eddie M., supra, 31 Cal.4th at p. 506.) Additionally, "section 777 follows the adult scheme insofar as probation violations do not trigger a term of confinement any longer than the maximum term for the underlying crime. (See Pen. Code, §§ 1203.2, subd. (c), 1203.1, subd. (a); People v. Howard (1997) 16 Cal.4th 1081, 1087-1088 [68 Cal.Rptr.2d 870, 946 P.2d 828].) By this measure, section 777 makes no unfavorable penal change, and the preponderance standard can apply." (Eddie M., supra, 31 Cal.4th at p. 506.)
*60 (5) In sum, "Proposition 21 transformed section 777(a)(2) into a probation violation procedure in which no criminal offense can be alleged." (Eddie M., supra, 31 Cal.4th at p. 508.) "Even if criminal in fact, new misconduct may be treated, under section 777(a)(2), only as a probation violation. If a violation is found, the violator may, at most, receive a more restrictive juvenile placement within the original maximum term." (John L. v. Superior Court (2004) 33 Cal.4th 158, 165 [14 Cal.Rptr.3d 261, 91 P.3d 205].)
In view of the different procedures in a proceeding under section 602 as compared to a proceeding under section 777, including that the former is initiated by a petition while the latter is initiated by a notice, and the constitutional distinctions between alleging that a crime has been committed as compared to alleging that probation has been violated, we conclude that the reference to a "petition" in section 733, subdivision (c), refers to a petition that is filed under section 602 but not a notice filed under section 777.
In support of his argument that section 733, subdivision (c), includes a section 777 notice, the minor cites In re Carl N. (2008) 160 Cal.App.4th 423 [72 Cal.Rptr.3d 823] (Carl N.), and In re Emiliano M. (2003) 31 Cal.4th 510 [3 Cal.Rptr.3d 140, 73 P.3d 1132] (Emiliano M.). In Carl N., the parties agreed, and the Court of Appeal assumed without discussion, that section 733, subdivision (c), could apply to a section 777 notice. (Carl N., supra, 160 Cal.App.4th at pp. 437-438.) For the reasons we have explained, we determine that the reference to a "petition" in section 733, subdivision (c), does not apply to a section 777 notice.
The other case cited by the minor, Emiliano M., supra, 31 Cal.4th 510, is not helpful, as it does not discuss section 733, subdivision (c). In Emiliano M., the California Supreme Court explained that section 777, subdivision (a)(2), "covers all situations in which new misconduct by a criminal juvenile probationer is alleged only as a probation violation," and "a more restrictive disposition can be sought and obtained under the statute regardless of the actual criminal nature of the violation that is pled. [Citation.]" (Emiliano M., supra, 31 Cal.4th at p. 516.) The California Supreme Court concluded that the Court of Appeal thus erred in determining that section 777, subdivision (a)(2), excluded an act by the minor that constituted a crime. (Emiliano M., supra, 31 Cal.4th at p. 516.) The Court of Appeal's judgment was reversed on this ground, and the California Supreme Court did not reach the issue of whether the gang registration provision of Penal Code section 186.30, *61 subdivision (b)(3), applies in a section 777, subdivision (a)(2), probation violation proceeding. (Emiliano M., supra, 31 Cal.4th at pp. 513, 517 & fn. 4.)
We conclude in this case that the August 22, 2006 notice under section 777, alleging the minor's violation of probation by failing to return to placement, does not constitute an offense alleged in a "petition" within the meaning of section 733, subdivision (c). Consequently, the fact that the minor admitted the allegations in the notice and the fact that the notice did not allege a section 707, subdivision (b), offense did not preclude the juvenile court from committing the minor to the DJJ.

The March 14, 2006 Petition
At the December 4, 2007 dispositional hearing for the August 22, 2006 notice, the juvenile court explained that the notice arose out of a "violation of probation" on the March 14, 2006 petition. The court indicated that the March 14, 2006 petition involved an assault under Penal Code section 245, subdivision (a)(1); the assault was a section 707, subdivision (b), offense; and in view of section 733, subdivision (c), the March 14, 2006 petition was "relevant in that it is the most recent [section] 707[, subdivision (b)] offense...."
(6) Section 733, subdivision (c), precludes DJJ commitment unless, as relevant here, the most recent offense alleged in a petition is described in section 707, subdivision (b). Section 707, subdivision (b), includes an "[a]ssault with a firearm or destructive device" (§ 707, subd. (b)(13)) and an "[a]ssault by any means of force likely to produce great bodily injury" (§ 707, subd. (b)(14)). Penal Code section 245, subdivision (a)(1), makes it a crime to commit "an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury...."
The minor contends that the juvenile court erred by concluding that the March 14, 2006 petition involved a section 707, subdivision (b), offense. He asserts that the March 14, 2006 petition alleges "`the crime of assault with a deadly weapon or by force likely to produce great bodily injury, in violation of [P]enal Code section 245(a)(1).'" The minor explains that "[t]he change of plea form [that he signed] does not specify whether the violation is for assault with a deadly weapon or for assault with force likely to produce great bodily injury; it merely states that the admission is to a `245.'" He also points to an *62 unsigned minute order that refers generally to the violations sustained by the juvenile court, including the "245(a)(1) PC felony" in the March 14, 2006 petition.
The minor argues that "under the least adjudicated elements test set forth in People v. Rodriguez (1988) 17 Cal.4th 253, 261 [70 Cal.Rptr.2d 334, 949 P.2d 31], [the offense] could have been committed by using an inherently dangerous weapon." He maintains that "`assault with a deadly weapon other than a firearm is not an offense enumerated in section 707(b)'"; "the finding that he committed an assault with a deadly weapon does not automatically mean that he used force likely to produce great bodily injury," which is a section 707, subdivision (b), offense; the court may not look "beyond the bare juvenile adjudication"; and therefore "[t]he least adjudicated elements of the offense defined by Penal Code section 245(a)(1) ... [are] insufficient to establish a section 707(b) offense."
The People respond that "both prongs of Penal Code section 245, subdivision (a)(1)," were alleged in the March 14, 2006 petition. The People contend that "[i]n admitting the offense as chargedwithout any amendment specifying that his offense was assault with a deadly weapon but not by means of force likely to produce great bodily injury ... [the minor] admitted he violated both prongs of Penal Code section 245, subdivision (a)(1), the deadly weapon prong and the likelihood of injury prong." The People further argue that an incident report regarding the assault provided a factual basis for the minor's admission to both prongs.
The March 14, 2006 petition against the minor alleged as follows: "On or about February 19, 2006, ... the crime of ASSAULT WITH A DEADLY WEAPON OR BY MEANS OF FORCE LIKELY TO PRODUCE GREAT BODILY INJURY, in violation of PENAL CODE SECTION 245(a)(1), a Felony, was committed by [the minor] who did commit an assault upon the person of Gustavo M. with a deadly weapon and instrument other than a firearm, ... a chair, and by means of force likely to produce great bodily injury."
On May 1, 2006, the minor executed a "GENERAL WAIVER AND ADMISSION" form, which stated, among other things, that he understood he was charged with "245," a "fel[ony]"; that he understood the nature of the charge; that he waived various rights; and that he admitted the charge.
At the juvenile court hearing the next day, the court received the general waiver form executed by the minor and questioned him concerning his admissions to certain allegations. Relevant here, the court asked the minor: "With regard to the [March 14, 2006] petition, on or about February 19, *63 2006, ... the crime of assault with a deadly weapon or by means of force likely to produce great bodily injury, in violation of [P]enal [C]ode section 245(a)(1), a felony, was committed by [the minor] who did commit an assault upon the person of Gustavo M. with a deadly weapon, an instrument other than a firearm, a chair, and by means of force likely to produce great bodily injury, is that true?" The minor responded, "Yes, Ma'am."
The minor's trial counsel subsequently concurred in the waivers and pleas and agreed that there was a factual basis for the admissions based on police and probation documentation. The court found that the minor made a knowing, intelligent, and voluntary waiver of his rights to a trial; he understood the nature of the allegations and the consequences of an admission; and there was a factual basis for the admission based on police and probation documentation.
In view of the particular allegations in the March 14, 2006 petition, and the minor's admission of those allegations, we determine that the minor admitted committing an offense that constituted an assault under both the "deadly weapon" clause and the "force likely" clause of Penal Code section 245, subdivision (a)(1). The March 14, 2006 petition is structured so that it generally refers to the crime described in Penal Code section 245, subdivision (a)(1), by paraphrasing the crime in capital letters and, as the statute itself reads, by referring to the deadly weapon clause and the force likely clause in the alternative. The petition then alleges with specificity the conduct by the minor that constituted the violation of section 245, subdivision (a)(1)"an assault upon the person of Gustavo M. with a deadly weapon and instrument other than a firearm, ... a chair, and by means of force likely to produce great bodily injury." (Italics added.) We do not believe that the initial reference to the two clauses of section 245, subdivision (a)(1), in the alternative, creates ambiguity or injects uncertainty into the allegations against him, nor does it suggest that only one clause of that subdivision was being alleged against him.
(7) In summary, in admitting the allegations in the March 14, 2006 petition, the minor admitted to committing an offense that constituted an assault under both the "deadly weapon" clause and the "force likely" clause of Penal Code section 245, subdivision (a)(1). This offense constitutes an "[a]ssault by ... means of force likely to produce great bodily injury," as described in section 707, subdivision (b)(14). Because the offense is described in section 707, subdivision (b), and it is "the most recent offense alleged in any petition and admitted or found to be true by the court," we conclude that the juvenile court was not precluded by section 733, subdivision (c), from committing the minor to the DJJ.

*64 DISPOSITION
The dispositional order is affirmed.
McAdams, J., and Duffy, J., concurred.
NOTES
[1] The California Youth Authority is now known as the Division of Juvenile Facilities, which is within the Department of Corrections and Rehabilitation, Division of Juvenile Justice. (Welf. & Inst. Code, § 1710, subd. (a); Pen. Code, § 6001; Gov. Code, §§ 12838, subd. (a), 12838.3; cf. Cal. Rules of Court, rule 5.805 [referring to a youth's commitment to DJJ].) The parties and the juvenile court have referred to the institution to which the minor was committed as the Division of Juvenile Justice. For purposes of this opinion, we will use the terms Division of Juvenile Justice and Division of Juvenile Facilities interchangeably.
[2] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[3] Section 782 states: "A judge of the juvenile court in which a petition was filed, at any time before the minor reaches the age of 21 years, may dismiss the petition or may set aside the findings and dismiss the petition if the court finds that the interests of justice and the welfare of the minor require such dismissal, or if it finds that the minor is not in need of treatment or rehabilitation. The court shall have jurisdiction to order such dismissal or setting aside of the findings and dismissal regardless of whether the minor is, at the time of such order, a ward or dependent child of the court."
[4] At the time of the minor's dispositional hearing in 2007, former section 707, subdivision (b), listed the following offenses: "(1) Murder. [¶] (2) Arson, as provided in subdivision (a) or (b) of Section 451 of the Penal Code. [¶] (3) Robbery. [¶] (4) Rape with force or violence or threat of great bodily harm. [¶] (5) Sodomy by force, violence, duress, menace, or threat of great bodily harm. [¶] (6) Lewd or lascivious act as provided in subdivision (b) of Section 288 of the Penal Code. [¶] (7) Oral copulation by force, violence, duress, menace, or threat of great bodily harm. [¶] (8) Any offense specified in subdivision (a) of Section 289 of the Penal Code. [¶] (9) Kidnapping for ransom. [¶] (10) Kidnapping for purpose of robbery. [¶] (11) Kidnapping with bodily harm. [¶] (12) Attempted murder. [¶] (13) Assault with a firearm or destructive device. [¶] (14) Assault by any means of force likely to produce great bodily injury. [¶] (15) Discharge of a firearm into an inhabited or occupied building. [¶] (16) Any offense described in Section 1203.09 of the Penal Code. [¶] (17) Any offense described in Section 12022.5 or 12022.53 of the Penal Code. [¶] (18) Any felony offense in which the minor personally used a weapon listed in subdivision (a) of Section 12020 of the Penal Code. [¶] (19) Any felony offense described in Section 136.1 or 137 of the Penal Code. [¶] (20) Manufacturing, compounding, or selling one-half ounce or more of any salt or solution of a controlled substance specified in subdivision (e) of Section 11055 of the Health and Safety Code. [¶] (21) Any violent felony, as defined in subdivision (c) of Section 667.5 of the Penal Code, which would also constitute a felony violation of subdivision (b) of Section 186.22 of the Penal Code. [¶] (22) Escape, by the use of force or violence, from any county juvenile hall, home, ranch, camp, or forestry camp in violation of subdivision (b) of Section 871 where great bodily injury is intentionally inflicted upon an employee of the juvenile facility during the commission of the escape. [¶] (23) Torture as described in Sections 206 and 206.1 of the Penal Code. [¶] (24) Aggravated mayhem, as described in Section 205 of the Penal Code. [¶] (25) Carjacking, as described in Section 215 of the Penal Code, while armed with a dangerous or deadly weapon. [¶] (26) Kidnapping, as punishable in subdivision (d) of Section 208 of the Penal Code. [¶] (27) Kidnapping, as punishable in Section 209.5 of the Penal Code. [¶] (28) The offense described in subdivision (c) of Section 12034 of the Penal Code. [¶] (29) The offense described in Section 12308 of the Penal Code. [¶] (30) Voluntary manslaughter, as described in subdivision (a) of Section 192 of the Penal Code." (Former § 707, subd. (b), as amended by initiative measure (Prop. 21, § 26, approved Mar. 7, 2000, eff. Mar. 8, 2000).)
[5] Three weeks after filing his reply brief, the minor filed an application for leave to file a supplemental opening brief. By order dated September 16, 2008, we granted the application and we also allowed the People to file a supplemental response.
[6] Section 777 states: "An order changing or modifying a previous order by removing a minor from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home, or commitment to a private institution or commitment to a county institution, or an order changing or modifying a previous order by directing commitment to the Youth Authority shall be made only after a noticed hearing. [¶] (a) The notice shall be made as follows: [¶] (1) By the probation officer where a minor has been declared a ward of the court or a probationer under Section 601 in the original matter and shall contain a concise statement of facts sufficient to support the conclusion that the minor has violated an order of the court. [¶] (2) By the probation officer or the prosecuting attorney if the minor is a court ward or probationer under Section 602 in the original matter and the notice alleges a violation of a condition of probation not amounting to a crime. The notice shall contain a concise statement of facts sufficient to support this conclusion. [¶] (3) Where the probation officer is the petitioner pursuant to paragraph (2), prior to the attachment of jeopardy at the time of the jurisdictional hearing the prosecuting attorney may make a motion to dismiss the notice and may request that the matter be referred to the probation officer for whatever action the prosecuting or probation officer may deem appropriate. [¶] (b) Upon the filing of such notice, the clerk of the juvenile court shall immediately set the same for hearing within 30 days, and the probation officer shall cause notice of it to be served upon the persons and in the manner prescribed by Sections 658 and 660. [¶] (c) The facts alleged in the notice shall be established by a preponderance of the evidence at a hearing to change, modify, or set aside a previous order. The court may admit and consider reliable hearsay evidence at the hearing to the same extent that such evidence would be admissible in an adult probation revocation hearing, pursuant to the decision in [People v. Brown (1989) 215 Cal.App.3d 452 [263 Cal.Rptr. 391]] and any other relevant provision of law. [¶] (d) An order for the detention of the minor pending adjudication of the alleged violation may be made only after a hearing is conducted pursuant to Article 15 (commencing with Section 625) of this chapter."