Filed 7/29/13  In re E.L. CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re E.L., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | C068217 |
| Plaintiff and Respondent, | (Super. Ct. No. JV125391) |
| v. | |
| E.L., | |
| Defendant and Appellant. | |

Delinquent minor E.L. (minor) appeals from a judgment committing him to the Division of Juvenile Justice (DJJ) (the successor to the California Youth Authority or CYA, see 3 Witkin & Epstein, Cal. Crim. Law (3d ed. 2000 & 2011 supp.) Punishment, § 8).  He contends a DJJ commitment was statutorily prohibited because his "most recent offense alleged in any petition" was not a DJJ-eligible offense (Welf. & Inst. Code,[1] § 733, subd. (c)), the juvenile court improperly required him to register as an arsonist, and the juvenile court abused its discretion in

_____

[1]  Further undesignated statutory references are to the Welfare and Institutions code.

1

committing minor to DJJ absent evidence he would benefit therefrom. We disagree and shall affirm.

## BACKGROUND

Because a key aim of minor's appeal is to demonstrate that the DJJ commitment was inappropriate, we recite in some detail minor's lengthy and continuous record of criminality and lack of compliance with court and probation orders, as well as the juvenile court's measured and increasingly onerous consequences, which failed to reform minor's delinquent and dangerous behavior.

On May 24, 2007, the People filed a delinquency petition alleging minor, then age 13, had committed a robbery on or about December 19, 2006. An intake report stated minor had admitted to an officer that he punched a fellow student and took his bicycle, and minor's father reported that minor was a runaway, was a gang "wannabe" and "has recently become infatuated with playing with fire."[2] Minor failed to appear, and when he was picked up on a warrant June 8, 2007, he stated he had been living on the streets. On July 11, 2007, minor (then 14) admitted the robbery and was placed on court probation for six months.

On July 23, 2007, the probation department filed a five-count probation violation petition (VOP), alleging minor left home without permission of his father or the probation officer, failed to keep the officer informed of his whereabouts, failed to go to counseling, and failed to attend community service.

On July 24, 2007, the People filed a new delinquency petition, alleging minor had shoplifted from a market two days before. Minor told an officer he ran away because his father was abusive; minor also admitted using marijuana daily, alcohol "on occasion," and cocaine "at least" three times, and associating with gang members.

_____

[2] This early fire-starting reference was apparently disregarded, because the record does not show any arson counseling was ordered for minor then, and it is not repeated in later summaries of the father's statements about minor.

2

On August 31, 2007, minor admitted the first count in the VOP, the remaining counts were dismissed, and the new petition was dismissed with a *Harvey* waiver (see *People v. Harvey* (1979) 25 Cal.3d 754).

On September 14, 2007, minor was made a ward and was committed to the custody of the probation officer "for suitable Level 'A' placement[.]"  On October 1, 2007, the probation officer reported that minor had not completed an assessment "due to repetitious acts of misconduct."

On October 16, 2007, the probation officer reported that assessment efforts continued, but that, "During the past three months, 53 incident reports have been written in regards to minor's negative and suicidal behavior."  However, later that day, minor was placed at "the on-grounds Morgan Alternative Center School[.]"  On November 2, 2007, the probation officer reported that minor absconded from the school on October 30, 2007, returned on November 1, 2007, and admitted drinking alcohol, whereupon the group home excluded him.

On December 3, 2007, minor was placed at the Paradise Oaks group home.  He absconded on December 8, 2007, but, with his father's help, minor turned himself in on December 16, 2007.

Before a new placement was found, the probation officer filed another VOP on January 7, 2008, alleging minor failed to participate in family counseling and disobeyed officers by engaging in physical altercations or threats against staff.  On January 16, 2008, minor admitted the first count of the pending VOP, and the other count was dismissed.  Minor was placed at a group home in Fresno, from which he promptly absconded, only to return on February 19, 2008, brandishing a .357 Magnum revolver.

On February 25, 2008, the People filed a new delinquency petition in Fresno County, alleging minor carried a switchblade, carried a concealed firearm, and possessed ammunition.

On March 5, 2008, minor admitted the switchblade charge and the other charges were dismissed.[3]  The case was transferred to Sacramento County.

On March 10, 2008, the probation officer filed a four-count VOP, alleging minor left court-ordered placement without the permission of his parent on two separate nights, and failed to participate in anger management or family counseling, as ordered.

Before a disposition hearing was held on the Fresno County charges or the pending VOP, the People filed a new delinquency petition on April 2, 2008, alleging that on March 28, 2008, minor had battered custodial staff "by gassing with saliva, a peace officer."  A probation report stated that when staff gave directions to the minor, he replied, "Fuck your program, I'm doing my own program" and then spat in an officer's face, and while being restrained he said, "Fuck you, I'm gonna fucking kill you, bitch ass!"

On April 14, 2008, minor admitted the felony battery charge, the pending VOP was dismissed, and minor was committed to the Sacramento Boys Ranch.

The probation officer filed a five-count VOP on June 27, 2008, alleging minor disobeyed Boys Ranch staff directives three times and twice committed suspension-level misconduct at school.  Relevant reports detailed the charged violations, which included threatening a teacher, and also stated minor had possessed contraband twice, and had committed other non-charged rule violations, and recommended minor be placed in "the Youth Detention Facility."

On July 8, 2008 (the day after he turned 15), minor admitted one count in the VOP and the other counts were dismissed.  On August 13, 2008, after minor was rejected by two other programs, the juvenile court, with minor's acquiescence, committed him to "Level B" placement at the "Rites of Passage" (ROP) program, with an interim stay at juvenile hall.  A later report recommended minor be returned to "Level A" placement, but on September 10, 2008, the juvenile court confirmed its earlier order committing minor to ROP in Nevada.

_____

[3]   Fresno County documents show minor was also *arrested* for a residential burglary committed on February 14, 2008 and a burglary at a group home on February 20, 2008. However, those charges were not included in the Fresno petition.

During the administrative delay required for transferring minor outside the state,[4] the probation officer reported his adjustment was poor; he had "many incidents" of disrespect, disobedience and "gang agitation" and failed to demonstrate the "maturity he will need to be successful at ROP." However, he was placed in Nevada on November 20, 2008.

A six-month review filed on March 5, 2009, stated minor's adjustment to ROP had been poor for the first several weeks, but had "improved significantly." However, on June 2, 2009, despite having been prescribed Seroquel and Depakote to help control his behavior, minor tried to kill himself, and he was terminated. In a report dated July 13, 2009, the probation department recommended minor be returned to the care of his father "with Multi-Systemic Therapy at River Oak. He would do well in a mainstream High School with an opportunity to participate in sports."

On July 16, 2009 (shortly after minor turned 16) the juvenile court ordered him returned to his father, under the supervision of the probation department.

The People filed yet another delinquency petition on September 22, 2009, alleging minor committed a carjacking on September 19, 2009. The probation officer filed a new VOP that same day alleging minor remained away from home overnight without parental or probation officer permission on September 14, 2009, and noting he had been cited for petty theft on July 19, 2009. An intake report stated minor reported he ran away from home because he was not getting along with his father and stepmother, and claimed to be a gang member, and the report stated the carjacking was committed with two other people, by using a toy handgun. The People amended the petition on October 7, 2009, to add robbery and vehicle theft charges arising from the carjacking.

A report recommended minor be placed at "Woodward Academy" where "his conduct behaviors as well as his mental health issues can be addressed." However, the Interagency

_____

[4] The Interstate Compact on the Placement of Children requires interaction between state officials when a delinquent is placed by one state into another. (See Fam. Code, §§ 7901, 7908.)

Management Authorization Committee (IMAC) which made that recommendation also wanted "minor to understand their options would be limited if he fails the program. If minor returns to court and IMAC, they may have no other option than a recommendation of a commitment to" DJJ.

On December 1, 2009, minor admitted the robbery and the other charges were dismissed, as was the pending VOP.[5] On December 8, 2009, minor was committed to a Level B placement at the Woodward Academy, in Iowa, where, after administrative delay, he was placed on March 23, 2010. At the hearing, the People emphasized that the IMAC report stated that if the Iowa commitment failed, the next likely placement would be at DJJ.

The juvenile court reviewed minor's "fairly significant history" and the fact that "we tried him at every level," including a prior Level B placement, group homes, Boys Ranch and Level A placement. The court noted the current offense was very serious and the only feasible choices, from a public safety standpoint, were Level B placement or DJJ, and if minor failed this placement, DJJ was next, but the court was willing to try Woodward Academy. At the end of the hearing, the trial court reiterated "this is kind of our last shot with E. short of the Youth Authority."

After a rocky start, the juvenile court's optimism appeared to have been well founded. A review report dated June 4, 2010, stated that although minor's behavior had been "poor" while he awaited placement, minor had adjusted well to the Woodward Academy, and on June 7, 2010, the court continued his placement there. Minor then "graduated" from Woodward Academy and was returned to his father on "an extended home pass" on September 24, 2010 (aged 17).[6]

_____

[5]    A report in evidence emphasized by minor indicates minor was not present when the toy gun was displayed, but also states he was the driver of a car stopped nearby, the adult who wielded the toy gun was in the car, and that adult stated the toy gun was minor's.

[6]    Minor's counsel and the father asserted minor was not on a pass, but had fully graduated from the program. This discrepancy is not material for purposes of this appeal.

Unfortunately, thereafter minor reportedly disobeyed parental and school rules, did not attend school, associated with gang members, and possessed drug paraphernalia and tobacco. A probation officer searched minor's cell phone on October 27, 2010, and among other incriminating items found a video of a fire, which minor claimed he filmed while walking home with a friend, and did not report because "his friend dialed 911[.]" Minor was under investigation for arson based on that video clip. Based on his record, the probation department recommended a DJJ commitment.

On November 9, 2010, the probation department filed a 12-count VOP and the People filed a two-count VOP, alleging two property arsons (Pen. Code, § 451, subd. (d)) committed on October 17, 2010.

A probation report stated possible facilities had rejected minor, some based on his "fire starting" issues, others due to prior program failures or his suicidal history.

A contested hearing on the two VOPs began on January 27, 2011. The juvenile court found true the two arson counts in the People's VOP petition, and eight of the counts in the probation department's VOP petition. Because minor does not challenge the sufficiency of the evidence regarding the sustained violations, we need not recite the evidence in detail. As for the arson counts, it is enough to say that his probation officer found a video of a fire on minor's cell phone, and minor made incriminating statements about lighting two brush fires, including admissions to a fire investigator. As for the counts in the probation department's VOP, there was evidence showing minor remained away from home without permission from probation, missed school, drove unlawfully, possessed tobacco, and displayed gang items on his phone and MySpace page.

A predisposition report recommended a DJJ commitment including an arsonist registration condition.[7] The People filed a memorandum seeking a DJJ commitment in part to

_____

[7] At the end of the VOP hearing, minor's counsel indicated his intent to obtain a psychiatric report because the arson findings would disqualify minor from some placement options. However, it appears no such report was obtained.

7

protect the public, inasmuch as lesser placements failed to reform minor's criminality. Minor's counsel sought release of minor to his father, because a DJJ commitment would be unduly punitive, and proposed conditions including minor's attendance at "Firesetter's Academy" to teach him about the danger of setting fires.

At an evidentiary disposition hearing on March 17, 2011, minor elicited testimony about the proposed anti-arson program, and about an anti-gang mentoring program. The father testified he believed minor had made "dramatic changes" and asked "the Court not to be predetermined to send him away." Minor testified he had passed his GED tests and had finished a course in life and career planning through American River College. Through the help of a religious mentor, he was on "a positive path" and had improved his behavior during incarceration. He had a 19-month old child and wanted to show his fiancée "the man I'm becoming."

The juvenile court committed minor to DJJ for a maximum period of five years, with substantial credits for time already served, and in part ordered arson registration. Minor timely filed this appeal.

## DISCUSSION

### I

### *Propriety of DJJ Commitment*

Minor contends section 733, subdivision (c) barred his commitment to DJJ. We disagree.

Section 733, stated in the negative, provides in part that a ward shall not be committed to DJJ if, inter alia, "(c) The ward has been or is adjudged a ward of the court pursuant to Section 602, and *the most recent offense alleged in any petition* and admitted or found to be true by the court is not described in subdivision (b) of Section 707[.]" (Emphasis added.)

Robbery is listed in section 707, subdivision (b), but property arson (Pen. Code, § 451, subd. (d)) is not.

Minor, acknowledging substantial contrary authority, contends he falls within this exclusion from DJJ, because "the most recent offense" alleged in the *probation violation petition* was arson. We reject this interpretation.

A number of cases have held that the petition referred to in section 733 is a delinquency petition filed under section 602, not a probation violation petition under section 777, which is in reality a notice of violation. (*In re D.J.* (2010) 185 Cal.App.4th 278, 285-288; *In re M.B.* (2009) 174 Cal.App.4th 1472, 1475-1477; *In re J.L.* (2008) 168 Cal.App.4th 43, 57-61.) We agree with those cases.

More importantly, in a decision filed after briefing in this case was complete, the California Supreme Court endorsed those cases. (*In re Greg F*. (2012) 55 Cal.4th 393, 400, 404-405, 410-411 (*Greg F.*).) In one passage the court stated, "Because section 733(c)'s commitment limitation depends on the nature of "the most recent offense alleged in any *petition*" (italics added), the statute does not bar DJF commitments imposed for probation violations on qualifying offenses. [Citations.] When the voters enacted Proposition 21 in 2000, they replaced the supplemental petition procedure formerly used under section 777 with a notice provision. [Citation.] Thus, a probation violation procedure is initiated under section 777 by the filing of a *notice*, not a petition." (*Greg. F*., *supra*, 55 Cal.4th at pp. 404-405.) This passage disposes of minor's contention.[8]

## II

### *Arson Registration*

The probation department recommended that minor register as an arsonist, and the juvenile court so ordered. On appeal, minor contends there is no authorization for this order,

_____

[8] Contrary to minor's view, a prior decision of this court does not advance his claim. In part we held it was improper to dismiss a section 602 petition to trigger the section 733 limitation on a DJJ commitment, thereby undermining an *already executed* plea agreement. (*V.C. v. Superior Court* (2009) 173 Cal.App.4th 1455, 1465-1467, disapproved on another point by *Greg F*., *supra*, 55 Cal.4th at pp. 404-405.) But this case does not involve the dismissal of a section 602 petition.

because he was not *adjudicated* to have committed arson, he was merely found to have *violated probation* by committing arson. We are not persuaded.[9]

The relevant statutory provision, Penal Code section 457.1, subdivision (b)(3), provides as follows:

> "Any person who, having committed the offense of arson or attempted arson, and after having been adjudicated a ward of the juvenile court on or after January 1, 1993, is discharged or paroled from the Department of the Youth Authority shall be required to register, in accordance with the provisions of this section, until that person attains the age of 25 years, or until the person has his or her records sealed . . . , whichever comes first."

The statute applies, inter alia, to any person who has "committed the offense of arson" *and* has "been adjudicated a ward of the juvenile court on or after January 1, 1993[.]" (Pen. Code, § 457.1, subd. (b)(3).) There is no requirement in this section that the ward be "adjudicated" to have committed the arson, that is, suffered an adverse finding upon a new delinquency petition, rather, the statute requires that the person be found to have "committed" arson. The juvenile court found beyond a reasonable doubt that minor committed arson when it sustained the VOP so alleging. (See *Eddie M.*, *supra*, 31 Cal.4th at pp. 485-486, 502-508 [post-Proposition 21, VOP alleging criminal conduct must still be proven beyond a reasonable doubt, but VOP alleging noncriminal conduct may be proven by a preponderance of the evidence].)

This statute stands in contrast to the sex offender registration statute in *In re Bernardino S.* (1992) 4 Cal.App.4th 613 (*Bernardino S.*). The relevant statute there--former Penal Code section 290, subdivision (d)(1))--required registration of wards discharged "after having been adjudicated a ward of the court . . . *because of the commission or attempted commission of the following offenses . . . .*" (Emphasis added.) (See Stats. 1985, ch. 1474, § 1, pp. 5404-5405, quoted in *Bernardino S.*, *supra*, 4 Cal.App.4th at p. 619, fn. 3.) There is no similar linkage in

_____

[9]    The People concede minor did not forfeit this claim by failing to object in the juvenile court, because minor is claiming the trial court lacked statutory authority to make the order. We accept the concession. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 886-887.) We note that registration conditions are not punitive in nature, and assist in the apprehension of recidivists. (*In re Luisa Z.* (2000) 78 Cal.App.4th 978, 982-983.)

Penal Code section 457.1 between the *reason* for the wardship and the offense triggering registration.

Minor's observation that, post-Proposition 21, a section 777 VOP petition may be based on noncriminal conduct adjudicated by the preponderance-of-the-evidence standard (see *John L. v. Superior Court* (2004) 33 Cal.4th 158, 179-180; *Eddie M.*, *supra*, 31 Cal.4th 440) is unpersuasive, because the VOP *in this case* did allege criminal conduct, two property arsons, and the juvenile court sustained that VOP based on the beyond-a-reasonable-doubt standard.

Also unpersuasive is minor's reference to the fact that our Supreme Court *declined to consider* whether a gang registration requirement could be triggered by a *noncriminal* VOP. (*In re Emiliano M.*, *supra*, 31 Cal.4th at p. 517, fn. 4.) That issue is not present here, because here the arson allegation was proven by means of a *criminal* VOP.

Finally, contrary to minor's view we find no "linguistic gamesmanship" in concluding (in Part I, *ante*) that arson as alleged in a VOP does not qualify as the "the most recent offense alleged in any petition" under section 733, subdivision (c), and concluding arson alleged in a VOP *does* qualify for purposes of applying Penal Code section 457.1. The determinations hinge on different statutes with different language aimed at different objectives.

Accordingly, we uphold the arson registration order. In doing so, we observe that the juvenile commitment order does not reflect the arson registration requirement imposed by the juvenile court. A criminal abstract of judgment must fully and accurately capture all components of a criminal defendant's sentence. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185; *People v. Zackery* (2007) 147 Cal.App.4th 380, 385-389.) So should a juvenile commitment order. Accordingly, we shall direct the trial court to correct the commitment order.

## III

### *Abuse of Discretion in DJJ Commitment*

As emphasized by our Supreme Court, punishment of delinquents for the purpose of "retribution" is prohibited. (*In re Julian R.* (2009) 47 Cal.4th 487, 496.) However, "Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in

11

conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. *This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter.*" (§ 202, subd. (b), emphasis added.)

Section 734 provides: "No ward of the juvenile court shall be committed to [DJJ] unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by [DJJ]."

"When determining the appropriate disposition in a delinquency proceeding, the juvenile courts are required to consider '(1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) minor's previous delinquent history.' [Citations.] Additionally, 'there must be evidence in the record demonstrating both a probable benefit to minor by a [DJJ] commitment and the inappropriateness or ineffectiveness of less restrictive alternatives.' [Citation.] A juvenile court's commitment order may be reversed on appeal only upon a showing the court abused its discretion." (*In re Jonathan T.* (2008) 166 Cal.App.4th 474, 484-485 (*Jonathan T.*).)

In this case, the juvenile court ordered every applicable less restrictive placement for minor at one time or another, but minor repeatedly absconded or violated placement rules. The juvenile court could find minor would probably benefit from a DJJ placement in part because its secure facilities would eliminate minor's ability to abscond. (See *Jonathan T.*, *supra*, 166 Cal.App.4th at p. 485 [minor with history of running away needed a closed setting]; *In re Tyrone O.* (1989) 209 Cal.App.3d 145, 153 [repeated escape attempts and placement failures supported CYA commitment]; *In re Martin L.* (1986) 187 Cal.App.3d 534, 544 [minor ran away from two prior placements, was rejected by others, and had long record, CYA commitment upheld].)

Much of minor's briefing is an invitation to this court to reweigh the evidence and the factors considered by the juvenile court. But minor's record, recited at length earlier, reflects multiple sustained delinquency petitions, multiple sustained VOPs, multiple absconds, and

12

repeated defiance of lawful orders and authority figures.  Because nothing else the juvenile court tried worked, nothing other than a DJJ commitment was practical.  In such circumstances, we find no abuse of discretion.

## DISPOSITION

The judgment is affirmed.  We direct the juvenile court to prepare and forward to DJJ a corrected juvenile commitment order consistent with this opinion.


                                                      DUARTE               , J.


We concur:


_____RAYE_____, P. J.


_____HULL_____, J.