Filed 5/8/13
Opinion following grant of rehearing

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ELIJAH W., | No. B241011 |
| Petitioner, | (Super. Ct. No. GJ29441) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate.  Robert Leventer, Juvenile Court Referee.  Petition granted.

Ronald L. Borwn, Public Defender, Albert J. Menaster, Laura Kislinger and Megan N. Gallow, Deputy Public Defenders, for Petitioner.

Steve Cooley, District Attorney, Roberta T. Schwartz and Cassandra Hart, Deputy District Attorneys, for Real Party in Interest.

_____

A lawyer is obligated to preserve the confidentiality of client information. (Bus. & Prof. Code, § 6068, subd. (e)(1); Rules Prof. Conduct, rule 3-100(A); see Evid. Code, §§ 954, 955.) As a narrow exception to this duty, a lawyer may, but is not required to, reveal confidential information relating to the representation of a client to the extent the lawyer reasonable believes the disclosure is necessary to prevent a criminal act likely to result in death or substantial bodily harm. (Bus. & Prof. Code, § 6068, subd. (e)(2); Rules Prof. Conduct, rule 3-100(B); see Evid. Code, § 956.5.) An expert engaged to assist the lawyer in his representation of a client is similarly obligated to maintain the confidentiality of client communications obtained in the course of accomplishing the purpose for which the lawyer was consulted. (Evid. Code, §§ 912, subd. (d), 952; see also Cal. Law Revision Com. com., 29B pt. 3A West's Ann. Evid. Code (2009 ed.) foll. § 952, p. 307.)

Under the Child Abuse and Neglect Reporting Act (CANRA) (Pen. Code, § 11164 et seq.) psychiatrists, psychologists, clinical social workers and other mental health professionals are "mandated reporters" (Pen. Code, § 11165.7, subd. (a)(21)) and, as such, have an affirmative duty to report suspected child abuse or neglect to a child protective agency or other appropriate authority. (Pen. Code, § 11165.9.) Failure to report suspected abuse is a misdemeanor. (Pen. Code, § 11166, subd. (c).) The duty to report is not excused or barred by the psychotherapist-patient privilege of Evidence Code section 1014. (Pen. Code, § 11171.2, subd. (b); *People v. Stritzinger* (1983) 34 Cal.3d 505, 512; see Evid. Code, § 1027.) Lawyers, however, are not mandated reporters.

Faced with these two divergent legislative schemes, what is the obligation of a psychologist retained or appointed as an expert to assist a lawyer representing a juvenile accused of committing a crime who learns the client is either the perpetrator or has been the victim of child abuse? Must the therapist comply with the affirmative duty to report imposed by CANRA? Or does the obligation of the lawyer and the lawyer's team to maintain the confidentiality of client information, together with the lawyer-client privilege, prevail over the mandated reporter law? Do those obligations also trump a

2

psychotherapist's duty under *Tarasoff v. Regents of California* (1976) 17 Cal.3d 425 (*Tarasoff*) to protect reasonably identifiable victims from a patient's threatened violent behavior?

These vexing questions, without a clear answer under California law, were raised in the juvenile court proceedings now before us. To assist in the preparation of his defense to a wardship petition, Elijah W. sought the appointment of Dr. Catherine Scarf, a psychologist who had indicated she would respect the lawyer-client privilege and defense counsel's duty of confidentiality and would not report client information concerning child abuse/neglect or a so-called *Tarasoff* threat to authorities. The juvenile court denied the motion, ruling Elijah's defense team was limited to members of the court's juvenile competency to stand trial (JCST) panel, notwithstanding that panel members had informed Elijah's counsel they would report to authorities any information of child abuse/neglect or *Tarasoff* threats.

The court erred in limiting Elijah's choice of expert assistance in this manner. In the absence of clear legislative guidance, we decline to read into CANRA a reporting requirement that contravenes established law on confidentiality and privilege governing defense experts and potentially jeopardizes a criminal defendant's right to a fair trial. Accordingly, we grant his petition for a writ of mandate and direct the court to vacate its order denying the motion to appoint Dr. Scarf as a defense expert and to issue a new order granting the motion.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 28, 2011 the People filed a two count wardship petition under Welfare and Institutions Code section 602 alleging Elijah, then 10 years old and in the fourth grade, had committed arson (Pen. Code, §§ 451, subd. (c) [willfully setting fire to a structure], 452, subd. (c) [recklessly burning a structure]). A deputy public defender was appointed to represent Elijah.

3

1. *Elijah's Motion for Appointment of a Defense Expert*

On March 6, 2012 Elijah, through counsel, moved pursuant to Evidence Code sections 730 and 952 for the appointment of Dr. Scarf as an expert "to assist counsel in conducting reasonably necessary psychological evaluations, assessments and other activities related to the presentation of the case." In particular, Elijah's counsel stated, "Given his age and our minimal communication, I have serious concerns regarding whether he can fully understand these proceedings and cooperate rationally with counsel. Counsel is aware of the high rate of developmental immaturity with younger juveniles in court and it would be ineffective assistance of counsel if counsel did not appoint an expert to evaluate how Elijah['s] age impacts his ability to comprehend the proceedings and participate in his defense."

Elijah explained the selection of Dr. Scarf, who was on the Los Angeles Superior Court's approved panel of psychiatrists and psychologists but not the JCST panel, was based on her assurance she would report any information concerning child abuse and/or neglect or *Tarasoff* threats obtained during her assessment of Elijah only to Elijah's counsel. "Dr. Scarf indicated that it is her position that her duty as a mandated reporter is satisfied by reporting this information to the attorney given her appointment as a forensic expert appointed under the attorney-client privilege. Further, Dr. Scarf stated that the [American Psychological Association] guidelines are consistent with her position." In contrast, the members of the JCST panel, when interviewed by an attorney in the public defender's office, said they would report to law enforcement or child welfare authorities any information regarding child abuse and/or neglect or *Tarasoff* threats despite the fact they were appointed to assist Elijah's counsel and their work would otherwise be protected from disclosure by the lawyer-client privilege. Elijah argued appointment of a defense expert who would not protect the confidentiality of lawyer-client privileged information violated his constitutional right to the effective assistance of counsel.

4

2. *The Juvenile Court's Amended Competency To Stand Trial Protocol*

Welfare and Institutions Code section 709, subdivision (a), provides, "During the pendency of any juvenile proceeding, the minor's counsel or the court may express a doubt as to the minor's competency. . . . If the court finds substantial evidence raises a doubt as to the minor's competency, the proceedings shall be suspended." Section 709, subdivision (b), in turn, provides, "Upon suspension of proceedings, the court shall order that the question of the minor's competence be determined at a hearing. The court shall appoint an expert to evaluate whether the minor suffers from a mental disorder, developmental disability, developmental immaturity, or other condition and, if so, whether the condition or conditions impair the minor's competency. The expert shall have expertise in child and adolescent development, and training in the forensic evaluation of juveniles, and shall be familiar with competency standards and accepted criteria used in evaluating competence. . . ."

To implement Welfare and Institutions Code section 709, which was enacted in 2010, the Los Angeles Superior Court has adopted a protocol setting forth basic procedures to be followed and establishing a panel of qualified psychiatrists and psychologists to conduct all juvenile competency assessments: "If the court suspends proceedings, or grants minor's request for a CST [(competency to stand trial)] evaluation, it shall appoint an expert from the Juvenile Competency to Stand Trial Panel (JCST Panel) under Evidence Code § 730 to perform a CST evaluation. The JCST Panel shall consist of experts in child and adolescent development, who have training in the forensic evaluation of juveniles, and are familiar with the competency standards and accepted criteria used in evaluating competence. [fn. omitted.] The Juvenile Court shall maintain a list of approved JCST Panel evaluators and appointments will be made from that list on a rotating basis." (Amended Competency To Stand Trial Protocol, dated January 9, 2012 (Protocol).)[1]

---

[1] The Protocol is in the form of a seven-page memorandum from Michael Nash, Presiding Judge of the Los Angeles Juvenile Court, to all juvenile delinquency court

5

The Protocol allows for a minor's defense counsel to obtain an assessment and not disclose it unless a doubt is declared as to the minor's competency. In addition, the Protocol provides no statements, admissions or confessions made by, or incriminating information obtained from, a minor in the course of a JCST evaluation shall be admitted into evidence or used against the minor in any juvenile, criminal or civil proceedings.

3. *The Juvenile Court's Order Denying the Motion*

The juvenile court denied Elijah's motion.[2] In its statement of decision the court initially dismissed Elijah's confidentiality concern as "merely academic," explaining, "In the hundreds of [Evidence Code section] 730 appointments that this court has granted, and in the thousands that have been granted by the juvenile and adult courts, this issue has never been raised. Nor, has there ever been a case brought to the court's attention where a minor has divulged child abuse or made a threat to commit a crime during a competency evaluation and the statement was later introduced in court or even prompted a report. The likelihood of this occurrence is remote because the focus of a competency evaluation is the functional ability of a minor to understand the court process."

Substantively, the court rejected Elijah's argument that any psychiatrist or psychologist appointed to assist in his defense could properly refuse to disclose to a child protection agency or other appropriate authority information concerning suspected child abuse or neglect: "[T]he notion that the mandated reporting duty would be satisfied by reporting potential abuse only to the minor's attorney would frustrate the purpose of the mandated reporting law for the simple reason that the minor's attorney is not a mandated

---

judicial officers and all interested parties, entities and agencies. It covers a variety of topics relating to the proper treatment of competency issues in juvenile court in addition to the procedures for a competency-to-stand-trial evaluation.

[2] Apparently because Elijah's motion was expressly limited to the appointment of Dr. Scarf, the motion for appointment of an expert was denied. The court did not appoint a member of the JCST panel to conduct an evaluation of Elijah under the Protocol.

6

reporter."[3]  The court explained the Protocol makes competency-to-stand-trial determinations in juvenile court more efficient and concluded limiting the appointment of an expert to members of the JCST panel does not impermissibly interfere with the lawyer-client privilege or impair the right to effective assistance of counsel.[4]

4. *Elijah's Petition for Writ of Mandate*

On May 7, 2012 Elijah petitioned this court for a writ of mandate directing the juvenile court to vacate its order denying his motion to appoint Dr. Scarf as a defense expert and to enter a new order granting the motion.  Elijah argued following the Protocol and limiting his right to appointment of a defense expert to individuals on the JCST panel, none of whom would protect the confidentiality of lawyer-client communications concerning suspected child abuse or neglect or *Tarasoff* threats, violated his constitutional right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution.  On June 5, 2012 we issued an order to show cause why the relief requested in the petition should not be granted.  Following

---

[3]  The court also noted Evidence Code section 956.5 permits attorneys to disclose otherwise confidential information when it may prevent a criminal act that is likely to result in the death of, or substantial bodily harm to, an individual.

[4]  By its terms, Welfare and Institutions Code section 709 applies only after a court has suspended proceedings following an expression of doubt as to a minor's competency by the court or the minor's counsel.  The Protocol is broader, applying whenever minor's counsel requests a competency-to-stand-trial evaluation; as discussed, in that circumstance counsel may choose not to disclose the evaluation unless a doubt is thereafter expressed.

The precise purpose for which Elijah's counsel sought appointment of Dr. Scarf is unclear.  On the one hand, the motion clearly requested an expert generally to assist in the presentation of the defense case by conducting reasonably necessary psychological evaluations and assessments.  On the other hand, counsel specifically expressed concern about Elijah's ability to comprehend the proceedings and participate in his defense—that is, his competency.  To the extent Elijah was not requesting a competency-to-stand-trial evaluation, the Protocol would not be implicated.  Given the potential significance of that threshold issue, it would have been better practice for his lawyer to have more clearly expressed her reasons for requesting the appointment and for the court, in the absence of such clarification, to have inquired.

7

briefing and oral argument, on February 25, 2013 we granted Elijah's petition in a published opinion. On March 20, 2013 we granted the People's petition for rehearing to consider additional arguments submitted by the parties concerning CANRA and its designation of psychiatrists and psychologists as mandated reporters.

## DISCUSSION

1. *The Need for Extraordinary Relief*

Notwithstanding the juvenile court's observation the confidentiality issue, and thus the related question of Elijah's right to the effective assistance of counsel, are "academic" because no juvenile has disclosed reportable information during a competency evaluation in that bench officer's experience, the perceived threat to open and effective communication by the minor to the defense team is real. It is certainly plausible, for example, that a young child accused of setting fires is acting out following some form of traumatic experience, perhaps even child abuse. Indeed, the delinquency petition itself states, "A Suspected Child Abuse Report (SCAR) may have been generated within the meaning of Penal Code §§ 11166 and 11168 involving the charges alleged in this petition."

Waiting to address these questions until the arguably confidential information is disclosed is too late if the psychologist retained to assist the defense believes disclosure is mandatory and the child is, for whatever reason, unwilling to waive his privilege or authorize its disclosure. Similarly, if the child is warned of the defense psychologist's intention to disclose information concerning child abuse or neglect prior to the assessment, the chill on full and frank communication is immediate; and disclosures necessary for effective representation may be inhibited. A writ of mandate is appropriate to address issues of this sort, particularly when novel questions of first impression and general importance are presented. (See, e.g., *Maldonado v. Superior Court* (2012) 53 Cal.4th 1112, 1124 [in context of court-ordered mental health examination in criminal case, mandamus appropriate to address whether, and if so, what protective measures are necessary to protect defendant's constitutional rights; "[t]he importance of resolving such

8

issues sooner rather than later is manifest"]; *Venture Law Group v. Superior Court* (2004) 118 Cal.App.4th 96, 101 [writ review appropriate when petitioner seeks extraordinary relief from a discovery order that may undermine a privilege].)

    2. *Governing Law*

        a. *The right to reasonably necessary ancillary defense services and the lawyer-client privilege*

Several interrelated doctrines ensure that a defendant in a criminal case or a minor subject to a juvenile wardship petition has the right not only to counsel but also to necessary ancillary defense services and that communications with both counsel and any experts engaged to assist counsel will remain protected from disclosure.[5] First, "'[t]he right to counsel guaranteed by both the federal and state Constitutions includes, and indeed presumes, the right to effective counsel [citations], and thus also includes the right to reasonably necessary defense services.'" (*People v. Blair* (2005) 36 Cal.4th 686, 732, quoting *Corenevsky v. Superior Court* (1984) 36 Cal.3d 319-320; see *Torres v. Municipal Court* (1975) 50 Cal.App.3d 778, 785 ["there can be no question that equal protection demands that in a proper factual situation a court must appoint an expert that is needed to assist an indigent defendant in his defense"].)

Second, with certain limited exceptions the Evidence Code provides a client has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication the client has had with his or her lawyer if the privilege is claimed by someone statutorily authorized to do so. (Evid. Code, § 954.) In addition to this statutory privilege, an attorney owes to his or her client an ethical duty of confidentiality as outlined in Business and Professions section 6068, subdivision (e)(1): "It is the duty of an attorney to do all of the following: [¶] . . . [¶] To maintain inviolate the confidence,

---

[5]    A minor's right to due process in juvenile delinquency proceeds includes the right to the effective assistance of counsel. (*In re Gault* (1967) 387 U.S. 1, 36-37 [87 S.Ct. 1428, 18 L.Ed.2d 527]; *Kent v. United States* (1966) 383 U.S. 541, 554 [86 S.Ct. 1045, 16 L.Ed.2d 84]; *In re Harris* (1967) 67 Cal.2d 876, 878-879.)

and at every peril to himself or herself to preserve the secrets of his or her client."[6] (See also Rules Prof. Conduct, rule 3-100(A) [a member shall not reveal confidential information relating to the representation without the informed consent of the client].) This duty of confidentiality is broader than the lawyer-client privilege and protects virtually everything the lawyer knows about the client's matter regardless of the source of the information. (See *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 787; *Goldstein v. Lees* (1975) 46 Cal.App.3d 614, 621, fn. 5; see generally Rest.3d Law Governing Lawyers, § 59, p. 455 ["[c]onfidential client information consists of information relating to representation of a client, other than information that is generally known"]; ABA Model Code Prof. Responsibility, rule 1.6(a) [lawyer is obligated to keep client information confidential].)

Taken together, these fundamental principles mandate that defense counsel's right to appointment of necessary experts, including medical or mental health experts, also includes the right to have communications made to the experts remain confidential to the same extent as communications directly between client and lawyer: "'[W]hen communication by a client to his attorney regarding his physical or mental condition requires the assistance of a physician to interpret the client's condition to the attorney, the client may submit to an examination by the physician without fear that the latter will be compelled to reveal the information disclosed.'" (*People v. Lines* (1975) 13 Cal.3d 500, 510; accord, *People v. Roldan* (2005) 35 Cal.4th 646, 724, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 ["'The attorney-client privilege is "a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer." [Citation.] That privilege encompasses confidential communications between a client *and experts retained by the defense.*'"]; *Torres v. Municipal Court, supra*, 50 Cal.App.3d at p. 784.)

---

[6] The limited exception to this duty permitting, but not requiring, an attorney to reveal confidential information necessary to prevent a criminal act likely to result in death or substantial bodily harm, expressed in Business and Professions Code section 6068, subdivision (e)(2), is discussed in section 3, below.

This principle is codified in Evidence Code section 952, which defines confidential communications between client and lawyer and expressly provides confidentiality is not destroyed by disclosure of those communications to third persons "to whom disclosure is reasonably necessary for . . . the accomplishment of the purpose for which the lawyer is consulted . . . ." The 1965 Law Revision Commission comments to this section explain, "[C]onfidential communications also include those made to third parties—such as the lawyer's secretary, a physician, or similar expert—for the purpose of transmitting such information to the lawyer because they are 'reasonably necessary for the transmission of the information.'"[7] (Cal. Law Revision Com. com., 29B pt. 3A West's Ann. Evid. Code (2009 ed.) foll. § 952, p. 307.) The Commission added, "A lawyer at times may desire to have a client reveal information to an expert consultant in order that the lawyer may adequately advise his client. The inclusion of the words 'for the accomplishment of the purpose for which the lawyer is consulted' assures that these communications, too, are within the scope of the privilege." (*Ibid*.)

b. *The interplay between the lawyer-client privilege and the psychotherapist-patient privilege*

Communications between a psychotherapist and a patient are generally confidential. (Evid. Code, § 1014.)[8] Specifically, when a psychotherapist is appointed by the court in a criminal proceeding at the request of defense counsel "in order to provide the lawyer with information needed so that he or she may advise the defendant whether to enter or withdraw a plea based on insanity or to present a defense based on his or her mental or emotional condition," the psychotherapist-patient privilege applies to communications between the defendant and the court-appointed psychotherapist. (Evid.

---

[7] "While not binding, the Commission's official comments reflect the intent of the Legislature in enacting the Evidence Code and are entitled to substantial weight in construing it." (*HLC Properties, Ltd. v. Superior Court* (2005) 35 Cal.4th 54, 62.)

[8] The exception to the psychotherapist-patient privilege permitting disclosure of confidential information if the patient is dangerous to himself/herself or to others, set forth in Evidence Code section 1024, is discussed in section 2.d., below.

11

Code, § 1017, subd. (a); see Cal. Law Revision Com. com., 29B pt. 3A West's Ann. Evid. Code (2009 ed.) foll. § 1017, p. 34 ["it is essential that the privilege apply where the psychotherapist is appointed by order of the court to provide the defendant's lawyer with the information needed . . . to present a defense . . ."].) There is no privilege, however, if the psychotherapist is appointed by the court to examine the patient for any other purpose than to assist the defense. (Evid. Code, § 1017, subd. (a).)

As discussed, when a psychotherapist is appointed pursuant to Evidence Code section 730 to assist defense counsel, he or she is obligated to maintain the confidentiality of the client's communications not only by the psychotherapist-patient privilege but also by the lawyer-client privilege. (*People v. Roldan*, *supra,* 35 Cal.4th at p. 724; *People v. Lines, supra,* 13 Cal.3d at p. 510.) Moreover as expressly noted by the Law Revision Commission in its comments, "[T]he attorney-client privilege may provide protection in some cases where an exception to the psychotherapist-patient privilege is applicable." (Cal. Law Revision Com. com., 29B pt. 3A West's Ann. Evid. Code (2009 ed.) foll. § 1017, p. 34.)

### c. *CANRA and mandated reporters' duty to report suspected child abuse*

For nearly 50 years California has used mandatory reporting obligations to identify and protect child abuse victims. Under the predecessor to CANRA, former Penal Code section 11161.5, only physicians, surgeons and dentists were required to report instances of known or suspected child abuse to law enforcement officials; and only physical abuse had to be reported. (Stats. 1965, ch. 1171, § 2, p. 2971.) Over time both the definition of "mandated reporter" and the type of abuse that must be reported have expanded to implement the belief that "reporting suspected child abuse is fundamental to protecting children." (*Stecks v. Young* (1995) 38 Cal.App.4th 365, 371.)

Today, all doctors, psychiatrist, psychologist, clinical social workers and other mental health professionals are included in the nearly four dozen separate categories of

12

mandated reporters identified in CANRA. (Pen. Code, § 11165.7, subd. (a)(1)-(44).)[9] Reports must be made of physical abuse (defined as the infliction of physical injury by other than accidental means); sexual abuse (including both sexual assault and sexual exploitation); neglect (either general or severe); willful cruelty or unjustifiable punishment; and unlawful corporal punishment or injury. (Pen. Code, §§ 11165.1, 11165.2, 11165.3, 11165.4 & 11165.5.) The duty to report is triggered when, based on knowledge or observation, the mandated reporter knows or reasonably suspects child abuse or neglect. (See Pen. Code, § 11166, subd. (a).)

The mandated reporter must immediately or as soon as practicably possible make a telephone report of known or suspected child abuse or neglect to any police or sheriff's department, county probation department (if designated by the county to receive such reports) or county welfare department (Pen. Code, §§ 11165.9, 11166, subd. (a)) and follow up with a written report within 36 hours. (Pen. Code, § 11166, subd. (a).) A report by a mandated reporter is confidential, and a mandated reporter is immune from both criminal and civil liability for any report required or authorized by CANRA. (Pen. Code, §§ 11167, subd. (d), 11167.5, 11172, subd. (a).)[10] If a mandated reporter fails to make a report, he or she is subject to misdemeanor penalties. (Pen. Code, § 11166, subd. (c).)

CANRA expressly excepts information regarding suspected child abuse or neglect from the psychotherapist-patient privilege: "Neither the physician-patient privilege nor

---

[9]     Penal Code section 11165.7, subdivision (a)(21), provides a "mandated reporter" includes "[a] physician and surgeon, psychiatrist, psychologist, dentist, resident, intern, podiatrist, chiropractor, licensed nurse, dental hygienist, optometrist, marriage and family therapist, clinical social worker, professional clinical counselor, or any other person who is currently licensed under Division 2 (commencing with Section 500) of the Business and Professions Code," which governs "healing arts."

[10]     Discretionary reporters have only limited immunity: A discretionary reporter is immune from liability unless it can be proved he or she knowingly made a false report or made a false report with reckless disregard for its truth or falsity. (Pen. Code, § 11172, subd. (a).)

13

the psychotherapist-patient privilege applies to information reported pursuant to this article in any court proceeding or administrative hearing." (Pen. Code, § 11171.2, subd. (b).)

Unlike physicians, psychologists and other mental health providers, attorneys are not mandated reporters under CANRA.[11] And there is no provision similar to Penal Code section 11171.2, subdivision (b), that abrogates the lawyer-client privilege for information regarding suspected child abuse or neglect.

d. *Tarasoff and a psychotherapist's duty to protect a reasonably identifiable victim from the violent behavior of a patient*

The final strand in this intricate tapestry is the psychotherapists' duty to protect potential victims of their dangerous patients recognized in *Tarasoff, supra*, 17 Cal.3d 425. In *Tarasoff* a patient had confided to his psychotherapist his intent to kill an unnamed but readily identifiable young woman upon her return from South America. The therapist notified police and requested the patient's involuntary commitment for observation in a mental hospital. The police released the patient after they were satisfied he appeared rational and promised to stay away from the woman. The patient killed the woman. Her parents sued the therapist for wrongful death for failure to warn them or their daughter about the danger his patient presented. (*Id.* at pp. 432-433.) The Supreme Court recognized the general common law rule that there is no duty to protect others from the criminal conduct of third parties, but explained an exception to this rule exists in

---

[11]     In contrast to California, several states have expressly included attorneys as mandated child abuse reporters. (See, e.g., Nev. Rev. Stat. Ann. (2012) § 432B.220, subd. (4)(i) [report must be made by "[a]n attorney, unless the attorney has acquired the knowledge of the abuse or neglect from a client who is or may be accused of the abuse or neglect"]; Ohio Rev. Code Ann. § 2151.421, subd. (A)(1)-(3) (2013) [although an attorney is not required to make a report based on information received in a privileged communication with a client, the client is deemed to have waived the privilege if he or she is under 18 years old and the attorney has reasonable cause to believe the client has suffered or faces a threat of suffering child abuse or neglect]; see generally Mosteller, *Child Abuse Reporting Laws and Attorney-Client Confidences:  The Reality and the Specter of Lawyer as Informant* (1992) 42 Duke L.J. 203.)

14

cases in which the defendant stands in some special relationship to either the person whose conduct needs to be controlled or the foreseeable victim of that conduct. (*Id*. at p. 435.) The Court rejected the therapist's contention he owed no duty to the victim because she was not his patient and held, "once a therapist does in fact determine, or under applicable professional standards reasonably should have determined, that a patient poses a serious danger of violence to others, he bears a duty to exercise reasonable care to protect the foreseeable victim of that danger." (*Id.* at pp. 431, 439.)[12]

Acknowledging the public importance of safeguarding the confidential character of psychotherapeutic communications, the Court explained the Legislature had already balanced the importance of effective treatment of mental illness and protecting the privacy rights of patients, on the one hand, and the public interest in safety from violent assault, on the other hand, in Evidence Code section 1024, which creates a specific and limited exception to the psychotherapist-patient privilege: "There is no privilege . . . if the psychotherapist has reasonable cause to believe that the patient is in such mental or emotional condition as to be dangerous to himself or to the person or property of another and that disclosure of the communication is necessary to prevent the threatened danger." "We conclude that the public policy favoring protection of the confidential character of patient-psychotherapist communications must yield to the extent to which disclosure is essential to avert danger to others." (*Tarasoff, supra*, 17 Cal.3d at pp. 440-442.)

Nonetheless, the *Tarasoff* Court emphasized a psychotherapist's determination a patient poses a serious danger of violence to others does not automatically translate into an obligation to notify either the potential victim or law enforcement authorities. Rather, the psychotherapist's duty is to exercise due care: "[I]n each instance the adequacy of the therapist's conduct must be measured against the traditional negligence standard of the rendition of reasonable care under the circumstances." (*Tarasoff, supra*, 17 Cal.3d at

---

[12]     Civil Code section 43.92 later limited a therapist's liability for failing to protect from a patient's threatened violent behavior to situations in which "the patient has communicated to the psychotherapist a serious threat of physical violence against a reasonable identifiable victim or victims."

15

p. 439; see also *id*. at p. 431 ["[t]he discharge of this duty may require the therapist to take one or more of various steps, depending on the nature of the case"].)

### 3. *The Juvenile Court Abused Its Discretion and Improperly Limited Appointment of a Defense Expert Psychotherapist to Members of the JCST Panel*

As the foregoing summary demonstrates, if reasonably necessary to assist his counsel in preparing and presenting a defense to the wardship petition, Elijah has a constitutional right to the appointment of a qualified expert, including a psychotherapist, to be part of his defense team and a corollary right to speak in confidence to that expert— a right that is further protected by both his counsel's duty to preserve the confidentiality of client information and the lawyer-client privilege as broadly defined in the Evidence Code. To a very limited extent the Legislature appears to have recognized this principle in Penal Code section 1165.7, subdivision (a)(18), which defines "mandated reporter" to include district attorney investigators and local child support agency caseworkers but relieves them of any reporting obligations when assisting an attorney appointed to represent a minor in dependency proceedings. Yet nothing else in CANRA or its legislative history[13] suggests the Legislature considered, let alone attempted to reconcile, the inconsistent obligations confronting a psychologist or psychiatrist appointed to assist defense counsel in a criminal proceeding: CANRA mandates reports of child abuse or neglect from these mental health professions and expressly waives the psychotherapist-patient privilege, yet omits attorneys from the ranks of mandated reporters and leaves intact the lawyer-client privilege, which extends to psychotherapists when acting as forensic consultants for the defense team.[14]

---

[13] The parties presented no arguments based on the legislative history of CANRA. Our own review of the former version of Penal Code section 11165 et seq. adopted in 1980 (Stats. 1980, ch. 1071, pp. 3421-3422), the 1987 legislation enacting the current version (Stats. 1987, ch. 1459, p. 5517), and subsequent amendments did not find any discussion of the impact of mandatory reporting on the role of an expert assisting defense counsel in a criminal case.

[14] Psychotherapists themselves are divided on the issue, as this case demonstrates. Dr. Scarf believes her responsibilities as a member of the defense team to maintain a

In the absence of a clear legislative resolution of the conflict, we are guided by two well-establish canons of interpretation. First, "[A] statute must be construed, if reasonably possible, in a manner that avoids a serious constitutional question." (*People v. Engram* (2010) 50 Cal.4th 1131, 1161; accord, *People v. Leiva* (2013) 56 Cal.4th 498, 506-507 ["'"'a court, when faced with an ambiguous statute that raises serious constitutional questions, should endeavor to construe the statute in a manner which *avoids* any doubt concerning its validity"'"'].) Second, courts have no power to recognize implied exceptions to the lawyer-client privilege. (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 739.) "Courts may not add to the statutory privileges except as required by state or federal constitutional law [citations], nor may courts imply unwritten exceptions to existing statutory privileges." (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 373; see *HLC Properties, Ltd. v. Superior Court* (2005) 35 Cal.4th 54, 67 ["'[t]he privileges set out in the Evidence Code are legislative creations; the courts of this state have no power to expand them or to recognize implied exceptions'"].)

To interpret CANRA to apply to a psychotherapist assisting defense counsel runs afoul of both these principles. The mandatory disclosure of client confidences by a member of the defense to report suspected child abuse or neglect has, at the very least, serious implications for a criminal defendant's constitutional right to the effective assistance of counsel. (See *People v. Roldan*, *supra,* 35 Cal.4th at p. 724; *Torres v. Municipal Court, supra*, 50 Cal.App.3d at p. 784.) We need not, and do not, decide whether such mandatory reporting, if coupled with appropriate procedural safeguards, could survive constitutional challenge. Rather, it is our task, if possible, to construe

client's confidences trumps the statutory reporting duty. The mental health professionals on the JCST panel do not. The professional literature on the topic reveals this split is widespread. (See, e.g., Dixon et al., *Attorney-Client Privilege versus Mandatory Reporting by Psychologists: Dilemma, Conflict, and Solution* (2006) 6 J. Forensic Psych. Practice 69; Connell et al., *Expert Opinion: Does Mandatory Reporting Trump Attorney-Client Opinion?* (2004) 24 Amer. Psych.-Law Soc. News 10; Note, *Lawyers and Mental Health Professionals Working Together: Reconciling the Duties of Confidentiality and Mandatory Child Abuse Reporting* (2011) 39 Fam. Ct. Rev. 388.)

CANRA to avoid this issue. In addition, reporting information obtained from the client while assisting defense counsel plainly violates the lawyer-client privilege as now defined; there is no express statutory exception permitting such a breach of client confidences in CANRA or the Evidence Code. Without clearer legislative direction, we decline to read into CANRA's silence on these points a reporting requirement that contravenes the established law of confidentiality and privilege governing defense experts and potentially jeopardizes a criminal defendant's right to a fair trial.

We reach essentially the same conclusion with respect to the potential disclosure of *Tarasoff* threats. First, it is by no means clear a psychologist engaged to assist counsel as part of a defense team, rather than performing professional services with his or her patient in a therapeutic setting, has a duty to report a threat of serious danger to a known victim. As discussed, the *Tarasoff* Court emphasized the duty it recognized was an exception to the fundamental rule precluding liability for failing to protect others from the criminal conduct of third parties and was predicated on the "special relation that arises between a patient and his doctor or psychotherapist." (*Tarasoff, supra*, 17 Cal.3d at pp. 434, 436.) The Court employed the seven-factor balancing test it had articulated in *Rowland v. Christian* (1968) 69 Cal.2d 108, 113, to determine, as a matter of public policy, it was appropriate to extend the protection of negligence law to the victim and her family under the circumstances presented (see *Tarasoff*, at p. 434), specifically noting that one of the defendant doctors had treated the patient, a second had supervised that treatment and the other two were involved in his examination and commitment. (*Id*. at p. 436, fn. 6.) The relationship of a forensic psychologist engaged by counsel to the defendant-client is necessarily different from that of the treating psychologists considered in *Tarasoff*. Whether balancing the *Rowland* factors—particularly those relating to the "moral blame" of the expert and the consequences to the community of imposing liability (that is, its chill on lawyer-expert-client communications)—would result in recognizing a duty in this situation is an unresolved question.

18

Second, even if the defense-expert psychotherapist does have a duty in these circumstances, the discharge of that duty does not necessarily require disclosure of otherwise confidential communications. Rather, under *Tarasoff* the psychotherapist is obligated to use reasonable care under the circumstances. (*Tarasoff, supra*, 17 Cal.3d at pp. 431, 439.) Dr. Scarf's declaration in support of Elijah's motion indicates, at least inferentially, she believes notifying the deputy public defender representing Elijah would constitute due care, satisfying any obligation she may have to an identifiable potential victim of a *Tarasoff* threat. Such notification would, in turn, trigger the attorney's responsibilities under Business and Professions Code section 6068, subdivision (e)(2), and rule 3-100(C) of the Rules of Professional Conduct to consider whether to reveal confidential information because she believes it necessary to prevent a criminal act likely to result in the death of, or great bodily harm to, an individual.[15]

That may indeed be sufficient. What constitutes negligence (or a breach of the duty of due care) in this context, as in most other cases of alleged negligence, depends on

---

[15]    Business and Professions Code section 6068, subdivision (e)(2), effective July 1, 2004 (Stats. 2003, ch. 765, §§ 1, 4, pp. 5746, 5749), provides, notwithstanding the duty set forth in subdivision (e)(1) to maintain inviolate the confidences of a client, "an attorney may, but is not required to, reveal confidential information relating to the representation of a client to the extent that the attorney reasonably believes the disclosure is necessary to prevent a criminal act that the attorney reasonably believes is likely to result in death of, or substantial bodily harm to, an individual."

In adopting this narrow exception to the duty of confidentiality and making a parallel amendment to Evidence Code section 956.5 creating an exception to the evidentiary privilege, the Legislature directed the creation of an advisory task force to study and make recommendations for a rule of professional conduct to implement this provision. (Stats. 2003, ch. 765, § 3, p. 5748.) As a result, effective July 1, 2004, rule 3-100(C) of the Rules of Professional Conduct provides, "Before revealing confidential information to prevent a criminal act as provided in [Business and Professions Code section 6068, subdivision (e)(2), and rule 3-100(B) of the Rules of Professional Conduct], a member shall, if reasonable under the circumstances: [¶] (1) make a good faith effort to persuade the client: (i) not to commit or to continue the criminal act or (ii) to pursue a course of conduct that will prevent the threatened death or substantial bodily harm; or do both (i) and (ii); and [¶] (2) inform the client, at an appropriate time, of the member's ability or decision to reveal information as provided in paragraph (B)."

19

all the circumstances of an individual case. (See *Tarasoff, supra*, 17 Cal.3d at p. 439; see generally *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 777 ["[t]he reasonable care required by negligence law depends on all the circumstances"].) We cannot evaluate in advance whether Dr. Scarf's intended notification of Elijah's attorney will insulate her from liability in any particular situation, assuming she owes a *Tarasoff*-type duty to a potential victim in the first place. But her position is certainly reasonable, and her willingness to safeguard the confidentiality of Elijah's communications at the risk of personal liability should not have been discounted by the juvenile court.

In sum, until the Legislature instructs differently, communications from Elijah to a psychotherapist appointed to assist in his defense should remain confidential: He was entitled to the assistance of an expert who would respect the lawyer-client privilege and defense counsel's duty of confidentiality and would not report client information concerning child abuse/neglect or a so-called *Tarasoff* threat to authorities. Because the members of the JCST panel would not agree to this fundamental principle, it was an abuse of discretion to deny Elijah's motion to appoint non-panel member Dr. Scarf.

## DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue directing respondent juvenile court to vacate its order of March 6, 2012 denying Elijah's motion for the appointment of Dr. Scarf and to enter a new order granting the motion.

PERLUSS, P. J.

We concur:

WOODS, J.                    ZELON, J.

20