Filed 5/10/16  In re D.M. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re D.M., a Person Coming Under the Juvenile Court Law. | B260515 (Los Angeles County Super. Ct. No. KJ30447) |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>D.M.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Juvenile Court of Los Angeles County, Phyllis Shibata, Juvenile Court Referee.  Affirmed.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

**INTRODUCTION**

D.M. appeals from the juvenile court's order finding him in violation of the conditions of his probation and from a disposition order committing him to the Division of Juvenile Justice. D.M. argues that the court deprived him of due process by amending a notice of probation violation to add a ground not included in the original notice, and then finding a violation on that ground. D.M. also argues that the court abused its discretion and violated D.M.'s right to confront adverse witnesses at the probation violation hearing when the court admitted and relied on hearsay evidence to find a violation. D.M. further argues that his attorney provided ineffective assistance by failing to object to the introduction of this hearsay evidence. We conclude that the court did not violate D.M.'s due process rights because D.M. had sufficient notice of and an opportunity to respond to the factual allegations of the probation violation, and that D.M. did not receive ineffective assistance of counsel because any deficiency in his attorney's performance did not cause any prejudice.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.    *The Terms of D.M.'s Probation*

When he was 14 years old, D.M. admitted to committing a forcible lewd act on another child under the age of 14 (Pen. Code, § 288, subd. (a)), and on April 14, 2011 the juvenile court declared him a ward of the court under Welfare and Institutions Code section 602.[1] The court placed D.M. home on probation subject to a number of conditions, including cooperating with a treatment plan that included sex offender counseling. Condition 1 of D.M.'s probation required him to "[o]bey all laws" and "[o]bey all orders of the Probation Officer and of any court." Condition 9 stated: "Attend a school program approved by the Probation Officer. Maintain satisfactory

---

[1]    All undesignated statutory references are to the Welfare and Institutions Code.

grades and attendance, and citizenship. Promptly notify Probation Officer of every absence." Condition 26 required D.M. to "[c]ooperate in a plan for psychiatric, psychological testing or treatment . . . to include sexual offender counseling." The court subsequently placed D.M. in a group home in Apple Valley, California.

In October 2012 D.M. admitted to molesting a child (Pen. Code, § 647.6, subd. (a)(1)), and the court ordered continued placement in the same group home. In December 2013 D.M.'s probation officer recommended moving D.M. to a facility in Iowa that offered a sexual offender program, after similar facilities in Southern California had rejected him because of his mental health issues. D.M. moved to the Iowa facility on December 17, 2013.

### B. *The Notices of Probation Violation*

On June 11, 2014 the Probation Department filed a notice of violation pursuant to section 777 alleging that D.M. had violated conditions 1 and 26 of his conditions of probation, although the notice did not provide the text of those conditions. The notice alleged three violations, including that D.M. "was reported to have been caught 'grooming' another resident . . . by brushing his foot against the other resident[']s leg." D.M. returned to a juvenile facility in California pending a hearing on September 30, 2014. Probation Officer Miriam Lopez, a probation officer assigned to D.M., filed a Probation Officer's Report.

On September 30, 2014, before the hearing started, the Department filed another section 777 notice alleging that D.M. had further violated conditions 9 and 26 of his conditions of probation while in the juvenile facility in California. Like the June 11, 2014 notice, the September 30, 2014 notice did not provide the text of the conditions the Probation Department alleged D.M. had violated. The September 30, 2014 notice alleged in count 1 that on July 9, 2014 a search of D.M.'s room at the juvenile facility in California revealed "pornographic material," including "sexually explicit drawings of anatomically correct women with genitals exposed as well as other drawings of animals with female secondary sexual body parts engaging in sexually explicit acts." Count 2

3

alleged that D.M. had made threats during class on July 11, 2014 and was subsequently "kicked out."

C.   *The Hearing on the September 30, 2014 Notice of Violation*

At the continued probation violation hearing on October 22, 2014, the court first heard evidence regarding the September 30, 2014 notice. The detention service officer who had searched D.M.'s room at the California juvenile facility testified that she searched D.M.'s sleeping area and found "inappropriate" drawings of women and animals displaying "secondary sexual characteristics of a woman," including breasts and vaginal areas, and cutouts of magazines of women in bathing suits. The officer testified that minors were not allowed to possess such pictures or drawings.

On cross-examination, the officer testified that she found the pictures and drawings "on [D.M.'s] bed and under his bed area, underneath the mat." In response to questioning by counsel for D.M. about the details of the pictures and "who tells the minors that they're not allowed to have such materials," the detention officer stated that the minors receive an orientation when they arrive at the facility and "they're told certain items that they can and cannot have. Throughout the course of their detainment, they're reminded of what they can and cannot have." After counsel for D.M. asked a few more questions, the court excused the witness and the People rested on that count. D.M. did not present any evidence on the September 30, 2014 notice.

The court asked for argument on whether the evidence presented regarding the September 30, 2014 notice proved D.M. had violated the terms of his probation. Counsel for D.M. said she did not know if conditions 9 and 26 were "the most updated number[s]," to which the court stated it "assum[ed], because [D.M.] had conditions of probation that pre-dated the changeover to that other list, that [the numbers] would be something else." The court suggested that condition 9, which used to be "going to school," was now condition 2, but neither the court nor the parties identified the then-current conditions of D.M.'s probation.

4

Counsel for D.M. argued that the People had not presented evidence that D.M. violated the conditions of probation alleged in the September 30, 2014 notice because they did not show that he was not going to school (condition 9) or that he was not cooperating with his treatment (condition 26).  The People responded that part of D.M.'s treatment was "to avoid and not possess pornographic material," and that its possession conflicted with "what he is allowed to do, both by probation or by order of the court."

With respect to count 1, the court said, "I think the issue here is that you've picked the wrong violations in terms of conditions. . . .  I would think that the condition he is in violation of is the condition that he follow the rules of probation, and I've heard testimony that a probation representative told [D.M.] and other minors, 'You're not to have these things,' and that minors are reminded of this.  So it's not that what he did doesn't constitute a violation of some term of probation, the defense argument is that it doesn't constitute a violation of 9 and 26.  And if you read what 9 and 26 are, it's not the current version, but what actually applied to [D.M.], I believe.  They are going to school, which would make sense for count 2, which you haven't proven, and 26 is 'cooperate in a plan for counseling,' which is very broad.  [¶]  So had you alleged [condition] 1, 'Obey all orders of probation,' then it would seem that he would be in violation for not obeying probation rules at the institution.  So then the issue becomes whether the failure to specify what conditions of probation he violated is defective and, therefore, he is not to be found in violation of anything.  So that is what I take the defense position to be."  The court then asked if either party had any authority regarding whether the court could find D.M. had violated the conditions of his probation by violating condition 1, and the court continued the hearing to October 24, 2014.  The People did not introduce any evidence on count 2 of the September 30, 2014 notice regarding an incident that allegedly led to D.M.'s dismissal from a classroom, and the court did not sustain that count.

When the hearing resumed on October 24, 2014, the People argued that D.M. "was aware of the facts upon which the People were relying upon to allege the violation of probation" in count 1 and that "the facts have not changed one bit."  Counsel for D.M., citing *In re Johnny R.* (1995) 33 Cal.App.4th 1579 (*Johnny R.*), argued that the People

5

cannot "midway through proceedings, amend a petition and add additional counts." "There is a big difference between not following the school rules and violating a term of the rules of juvenile hall. I don't know what the terms of juvenile hall are. . . . Those rules [were] not presented, so there was no way to have a defense to that. . . . So I still don't know what, exactly, was violated. . . . I never questioned the witness about the rules, what was said to him, and it wasn't even presented during the hearing." The court stated, "[Q]uite frankly, I don't think anybody knew or paid attention to what those conditions were until the end of the hearing, because if these were conditions that the People and the defense knew of, then there probably wouldn't be that question, 'Well, what's condition 9? What's condition 26?' Both sides would have known what they were as it applies to this minor."

The court concluded that D.M. had notice "of what the violation was factually, and then it appears that everyone didn't give much thought to how that would constitute a violation of some probation counts. And whether it was 9 or 26 or 1 or something else, I think it was adequately described as to give the defense the notice as to the date, the allegations that were supposed to have occurred, plus the factual foundation for what the offense was." The court ruled that *Johnny R.* was distinguishable because, unlike that case, the People in this case had not added any additional counts or charges. The court sustained count one, finding by a preponderance of evidence that D.M. had violated the conditions of his probation by possessing sexually-explicit drawings after he had been told "not to have this kind of material."

        D.      *The Hearing on the June 11, 2014 Notice of Violation*

The court also conducted the hearing on the June 11, 2014 notice on October 24, 2014. Probation Officer Miriam Lopez testified that during a March 2014 visit to the Iowa facility, she was "informed that [D.M.] was grooming other minors," which meant "trying to become friends with other kids . . . to . . . have sexually-related . . . interactions with them." Counsel for D.M. made a foundation objection regarding the definition of "grooming other minors," but she did not make a hearsay objection. The court admitted

the testimony subject to a motion to strike, and the prosecutor asked Lopez what "grooming" meant. Lopez explained that she became familiar with the term more than nine years ago and that "grooming" is "a very known term in . . . sexual offender programs." The court then overruled counsel for D.M.'s renewed foundation objection.

The People elicited further testimony from Lopez on the reported grooming incidents in Iowa without objection. Lopez testified that she "was informed that [D.M.] was sitting down and began to brush his foot against the leg of another minor who was 14 at the time." Lopez referred to another grooming incident that occurred before March 2014. She testified that D.M. knew he was not permitted to engage in activities like grooming because she had instructed him "not to do anything of a sexual nature."

Counsel for D.M. did not ask Lopez any questions on cross-examination about the grooming incident. Instead, she focused her questions on D.M.'s progress in therapy, his willingness to open up about his sexual behaviors and past abuse, and his positive interactions and experiences with the Iowa facility's staff and residents. During her cross-examination, counsel for D.M. asked Lopez a number of questions about the Iowa facility's 180-day progress report, which was part of Lopez's Probation Officer's Report, which had been filed on June 11, 2014. On re-direct examination, the prosecutor asked Lopez a series of questions about her report and the progress report from the Iowa facility. The court received Lopez's report, including the Iowa progress report, without objection by counsel for D.M.

On October 29, 2014 the court found true the allegation that D.M. engaged in impermissible sexual conduct by grooming another resident. The court found not true the remaining allegations in the June 11, 2014 notice.

E.    *The Disposition Hearing*

At the disposition hearing on November 25, 2014 the People argued that the court should commit D.M. to a more restrictive setting with the Department of Juvenile Justice. D.M. argued that the court should return him to the Iowa facility to continue his treatment there. The court agreed with the People, finding that "[n]ow that [D.M.] is 18 . . . the best

7

program for [him]" was the Department of Juvenile Justice facility in Stockton, California. The court discussed the factors it had weighed in reaching this conclusion, including "public safety, other minors, other people versus rehabilitative opportunity for [D.M.] and the likelihood of rehabilitation in this placement setting." The court also acknowledged that it would be easier for D.M.'s father to visit him in Stockton than in Iowa. The court set the maximum term of confinement at eight years and eight months, and awarded 625 days of credit. D.M. timely filed a notice of appeal.

## DISCUSSION

A.      *Standard of Review and Section 777*

The juvenile court has discretion to modify disposition orders that have not succeeded in rehabilitating the minor. (§§ 775, 777; *In re Eddie M.* (2003) 31 Cal.4th 480, 489.) Section 777 allows the court to modify a placement order when the court finds that the minor has violated a condition of his or her probation not amounting to a crime. (§ 777, subd. (c).)[2] "[T]he determination whether to revoke probation is committed to the sound discretion of the court." (*In re Kevin F.* (2015) 239 Cal.App.4th 351, 362.)

Section 777 requires a probation officer or prosecutor to provide notice of an alleged violation of a condition of probation containing "a concise statement of facts sufficient to support this conclusion." (§ 777, subd. (a)(2); see *In re Greg F.* (2012) 55 Cal.4th 393, 405 ["a probation violation procedure is initiated under section 777 by the filing of a *notice*"].) "The facts alleged in the notice shall be established by a

---

[2]      Section 777 provides in relevant part: "An order changing or modifying a previous order by removing a minor from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home, or commitment to a private institution or commitment to a county institution, or an order changing or modifying a previous order by directing commitment to the Youth Authority shall be made only after a noticed hearing." The Youth Authority is also referred to as the Division of Juvenile Facilities (§ 1703, subds. (c), (d)), and the Director of the Youth Authority is now the Director of the Division of Juvenile Justice. (§ 1711.)

8

preponderance of the evidence at a hearing to change, modify, or set aside a previous order." (§ 777, subd. (c); see *In re Eddie M., supra*, 31 Cal.4th at p. 485; *In re D.J.* (2010) 185 Cal.App.4th 278, 284.)

      B.     *The Court Did Not Violate D.M.'s Due Process Rights by Finding a Violation Based on the September 30, 2014 Notice*

D.M. argues that the juvenile court deprived him of his rights to due process and to present a defense by "permitt[ing] the prosecution to amend the September 30, 2014, section 777 notice to add a probation term not initially listed on the notice as one [D.M.] had violated." He argues that the "amendment foreclosed [his] ability to defend himself in the contested probation revocation hearing, because he was deprived of notice of the charge made against him."

The provisions in the Code of Civil Procedure relating to variance and amendment of pleadings in civil actions apply to juvenile proceedings and petitions, so long as those provisions comport with due process. (§ 678; see *In re Man J.* (1983) 149 Cal.App.3d 475, 480-481; Cal. Rules of Court, rule 5.524(d); see also *In re Andrew L.* (2011) 192 Cal.App.4th 683, 688-689 (*Andrew L.*) [applying the provisions in the Code of Civil Procedure governing the amendment of pleadings to conform to proof to dependency proceedings under § 348)].)[3] "[T]he essence of due process is actual notice and a 'meaningful opportunity' to be heard." (*In re Brian K.* (2002) 103 Cal.App.4th 39, 42; see *In re Donnell L.* (1989) 212 Cal.App.3d 185, 192 ["the purpose of the requirement of notice as prescribed in section 777 is to protect the minor's constitutional right to due process"].)

---

[3]     Section 348, which addresses hearings in dependency cases, uses language identical to the language of section 678. It provides that "provisions of . . . the Code of Civil Procedure relating to variance and amendment of pleadings in civil actions shall apply to petitions and proceedings under this chapter, to the same extent and with the same effect as if proceedings under this chapter were civil actions."

Two sections of the Code of Civil Procedure authorize a court to amend or permit amendments to pleadings.  First, Code of Civil Procedure section 473, subdivision (a)(1), provides that a court may allow an amendment to a pleading to correct a mistake.  (See *Andrew L.*, *supra*, 192 Cal.App.4th at p. 689.)  Code of Civil Procedure section 473, subdivision (a)(1), provides, in relevant part: "The court may . . . in its discretion, after notice to the adverse party, allow, upon any terms as may be just, an amendment to any pleading . . . ."  Second, Code of Civil Procedure section 469 liberally allows amendments to pleadings to conform to proof unless they are "material."[4]  (Code Civ. Proc., § 469; see *Andrew L.*, at p. 689.)  A material variance is one that actually misled the adverse party to his or her prejudice in maintaining his or her action or defense on the merits.  (Code Civ. Proc., § 469; see *Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359, 1378 (*Duchrow*).)  "The basic rule from civil law . . . is that amendments to conform to proof are favored, and should not be denied unless the pleading as drafted prior to the proposed amendment would have misled the adversarial party to its prejudice."  (*In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1042.)  A court should refuse an amendment to conform to proof if the variance between the pleading and proof is so great that it would violate due process to allow the amendment.  (*Andrew L.*, at p. 689; *In re Jessica C.*, at pp. 1041-1042.)

In deciding whether to allow an amendment during trial, courts are guided by two general principles:  "'"(1) whether facts or legal theories are being changed and (2) whether the opposing party will be prejudiced by the proposed amendment.  Frequently, each principle represents a different side of the same coin:  If new facts are being alleged, prejudice may easily result because of the inability of the other party to investigate the validity of the factual allegations while engaged in trial or to call rebuttal witnesses.  If the same set of facts supports merely a different theory . . . no prejudice can result.'"'"

---

[4]     The court may even allow "material" amendments "upon such terms as may be just."  (Code Civ. Proc., § 469.)

(*Duchrow*, *supra*, 215 Cal.App.4th at p. 1378; see *Garcia v. Roberts* (2009) 173 Cal.App.4th 900, 910.) " " "The basic rule applicable to amendments to conform to proof is that the amended pleading must be based upon the same general set of facts as those upon which the cause of action or defense as originally pleaded was grounded." " " (*Duchrow*, at p. 1378; *Garcia*, at p. 910.)

The September 30, 2014 notice alleged that D.M. violated certain terms of his probation by possessing "sexually explicit drawings of anatomically correct women with genitals exposed as well as other drawings of animals with female secondary sexual body parts engaging in sexually explicit acts." In finding this allegation true, the court did not amend the notice to add any facts beyond the scope of those included in the original notice. The court only identified the correct condition D.M. violated by possessing the contraband materials.

D.M. was not prejudiced by the amendment because he had a full opportunity to challenge the Department's factual allegations. Counsel for D.M. questioned the probation officer who conducted the search of D.M.'s room and found the pictures and drawings, and asked the officer where she found the items and how D.M. would know he was not allowed to have them. D.M. also had the opportunity to present evidence regarding the September 30, 2014 notice, although he chose not to do so.

D.M. argues he was misled by the variance between the original and amended notices because he would have prepared his defense differently had the original petition referenced condition 1 instead of condition 26. As the juvenile court observed, however, during the hearing neither side paid much attention to the specific conditions identified in the September 30, 2014 notice. Instead, counsel for D.M. and the prosecutor attempted to prove or disprove the factual allegations in the notice. There is nothing in the record to suggest that D.M. would have prepared his defense differently had the original notice referenced condition 1. Under these circumstances, D.M. did not suffer any prejudice when the court effectively amended the September 30, 2014 notice to reference condition 1 instead of condition 26. (See *Urke*, *supra*, 197 Cal.App.4th at p. 775 [no prejudice where defendant had notice of the factual basis for probation revocation]; *In re*

11

*Jessica C.*, *supra*, 93 Cal.App.4th at p. 1042 [no prejudice where "basic allegation" was included in original petition]; *In re Man J.*, *supra*, 149 Cal.App.3d at p. 481 [no prejudice where section 602 petition was amended but the "nature of the charge remain[ed] unchanged"].)

Citing *In re Babak S.* (1993) 18 Cal.App.4th 1077 (*Babak*), D.M. argues that a section 777 notice must "identify the specific probation violation the minor is alleged to have committed." The court in *Babak*, however, held only that a court's order sustaining an allegation in a section 777 notice must be based on "the theory articulated by the People" in the notice. (*Babak*, *supra,* 18 Cal.App.4th at p. 1086.) The September 30, 2014 notice specifically alleged that D.M. had violated his probation by possessing sexually-explicit materials, which was the "theory" the People proved. (See *Urke*, *supra*, 197 Cal.App.4th at p. 775 [distinguishing *Babak* because the original petition specifically alleged the factual basis for the probation violation proven in court].)

D.M.'s reliance on *Johnny R.*, *supra*, 33 Cal.App.4th 1579, is also misplaced. In that case, the court held that amending a section 602 petition to add a count of possession of a dirk or dagger after completion of direct examination of the prosecution's principal witness violated the juvenile's right to due process. (*Id.* at pp. 1584-1585.) The court reasoned that "the minor had never been put on notice of a need to defend against the weapons charge." (*Id.* at p. 1584.) Here, D.M. was on notice that he needed to defend against a charge of possessing sexually-explicit materials.

Moreover, *Johnny R.* concerned criminal charges alleged in a petition under section 602, not allegations of non-criminal probation violations under section 777. Amending a section 602 petition during a contested hearing is appropriate only if a new criminal offense is "'necessarily included'" in the offense actually charged or is a lesser included offense pleaded in the charging allegations. (*In re A.L.* (2015) 233 Cal.App.4th 496, 500; see *In re Robert G.* (1982) 31 Cal.3d 437, 445.) D.M. has not cited any authority for the proposition that this heightened standard for amendments of section 602

12

petitions applies to amendments of a section 777 notice.[5]  In addition, unlike the minor in *Johnny R.*, D.M. has not carried his burden of showing how the amended notice prejudiced him.  (See *Johnny R.*, *supra*, 33 Cal.App.4th at pp. 1584-1585 [observing that the defense strategy may have been different had the original section 602 petition included the additional charge ultimately sustained by the court].)  As the juvenile court here noted, neither side's arguments hinged on the language of the probation conditions identified in the notice, and D.M. never disputed that he possessed sexually-explicit materials or that the terms and conditions of his probation precluded him from possessing such materials.

C.      *Any Error in the Admission of Hearsay During Lopez's Testimony Was Harmless, and the Failure by Counsel for D.M. To Object Was Not Ineffective Assistance of Counsel*

D.M. argues that the juvenile court erred by admitting Lopez's testimony about D.M. "grooming" another resident in the Iowa facility and that this error violated D.M.'s due process right to confront witnesses.  Because D.M. did not assert a hearsay objection to the admission of Lopez's testimony, however, he has forfeited the argument.  (See Evid. Code, § 353, subd. (a); *People v. Stevens* (2015) 62 Cal.4th 325, 334 [defendant forfeited argument evidence was inadmissible hearsay by failing to object at trial]; *People v. Tafoya* (2007) 42 Cal.4th 147, 166 [defendant forfeited federal confrontation clause argument by failing to raise it at trial].)

Moreover, even though certain "reliable hearsay" is admissible in section 777 proceedings (§ 777, subd. (c); *John L. v. Superior Court* (2004) 33 Cal.4th 158, 165; Cal. Rules of Court, rule 5.580(e)(1)), any error in admitting Lopez's testimony about the

---

[5]     Unlike a section 602 petition, a notice under section 777 cannot allege a criminal offense and does not "'involve criminal guilt'" or "'"stigma."'"  (*In re J.L.* (2008) 168 Cal.App.4th 43, 59; compare § 777, subd. (c) [preponderance standard applies to section 777 notices] with *In re Greg F., supra*, 55 Cal.4th at p. 404 ["[o]ffenses alleged in [a] 602 petition must be proven true 'beyond a reasonable doubt' and be 'supported by evidence[ ] legally admissible in the trial of criminal cases'"].)

grooming incident was harmless because essentially the same facts came into evidence when the court admitted Lopez's Probation Officer's Report without objection. As noted, Lopez's report included the progress report from the Iowa facility, which stated in several places that D.M. had groomed other residents. (See *People v. Bryant* (2014) 60 Cal.4th 335, 414-415 [error in admitting hearsay statement was harmless because statements by another witness that "conveyed the same information" were "properly admitted"]; *People v. Riccardi* (2012) 54 Cal.4th 758, 804 [error in admitting hearsay evidence was "substantially mitigated by other admissible evidence"].)

D.M. also argues that his attorney's failure to object constituted ineffective assistance of counsel. A minor's right to due process in juvenile delinquency proceedings includes the right to the effective assistance of counsel. (*Elijah W. v. Superior Court* (2013) 216 Cal.App.4th 140, 150, fn. 5.) "'In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome.'" (*People v. Gamache* (2010) 48 Cal.4th 347, 391.) An appellate court will reverse a conviction (or, as here, a probation violation finding) on direct appeal only when the record demonstrates there could have been no rational tactical purpose for counsel's challenged act or omission. (*Ibid.*; see *People v. Anderson* (2001) 25 Cal.4th 543, 569.) It is not necessary, however, to determine "'whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" (*In re Fields* (1990) 51 Cal.3d 1063, 1079; see *People v. Carrasco* (2014) 59 Cal.4th 924, 982; *People v. Mesa* (2006) 144 Cal.App.4th 1000, 1008.) Prejudice results only where there is a reasonable probability that, absent counsel's alleged error, the defendant would have received a more favorable result. (*In re Champion* (2014) 58 Cal.4th 965, 1007; *Gamache*, at p. 391.)

D.M. argues that his attorney provided ineffective assistance by failing to object to the admission of hearsay testimony by Lopez. Even if counsel's performance was deficient, however, it did not prejudice D.M. because the court admitted essentially the same evidence when it admitted Lopez's report, which, as noted, included the Iowa facility's progress report stating that D.M. had groomed other residents. Because D.M. did not suffer prejudice as a result of his attorney's failure to object to Lopez's testimony, his ineffective assistance of counsel argument fails, and we do not consider whether his attorney's decision was a reasonable tactical choice. (See *In re Fields*, *supra*, 51 Cal.3d at p. 1079.)

## DISPOSITION

The order is affirmed.


SEGAL, J.


We concur:


ZELON, Acting P. J.


BLUMENFELD, J.[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.