Filed 8/17/21  In re T.L. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re T.L., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B306395 (Super. Ct. No. MJ23056) (Los Angeles County) |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> T.L., <br><br> Defendant and Appellant. | |

In 2017, the juvenile court adjudged T.L. a ward of the court for an offense committed when he was 11 years old. Effective January 1, 2019, Senate Bill No. 439 (SB 439) amended Welfare and Institutions Code section 602[1] to eliminate juvenile

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

court jurisdiction over minors who were under age 12 at the time they committed certain offenses. T.L.'s offense is among those offenses.

T.L. moved to dismiss his wardship petition under section 602. The juvenile court denied the motion, finding SB 439 did not apply retroactively to T.L. because his judgment became final before the amended statute's operative date of January 1, 2019.

T.L. contends his juvenile adjudication was not final as of January 1, 2019 because he remained on probation when SB 439 went into effect. He is incorrect. SB 439 terminated the juvenile court's jurisdiction over T.L. by operation of law on January 1, 2019. (See *In re David C.* (2020) 53 Cal.App.5th 514, 520-521 (*David C.*).) When that occurred, T.L.'s probation also ended. In the absence of a remaining probationary period, T.L.'s reliance upon *People v. McKenzie* (2020) 9 Cal.5th 40 (*McKenzie*) is misplaced. We affirm.

PROCEDURAL BACKGROUND[2]

On July 2, 2015, the Placer County District Attorney filed a section 602 wardship petition alleging that 11-year-old T.L. came within the juvenile court's jurisdiction after he committed a criminal offense. T.L. admitted the offense and the matter was transferred to Los Angeles County for disposition.

On November 15, 2017, the juvenile court declared T.L. a ward of the court, found the offense to be a misdemeanor and placed him home on probation.

As noted above, SB 439 went into effect on January 1, 2019. Notwithstanding the juvenile court's lack of continuing

_____

[2] We dispense with a factual statement because the facts underlying the offense are not relevant to the issues on appeal. (See *David C., supra,* 53 Cal.App.5th at p. 517, fn. 1.)

2

jurisdiction over T.L. as of that date, the People filed a probation violation petition on August 14, 2019. T.L. admitted count 2 of that petition. On August 29, 2019, the juvenile court sustained the petition, terminated probation and ordered T.L. detained in juvenile hall pending suitable placement. No appeal was filed and the SB 439 issue was not raised.

A second probation violation petition was filed on December 24, 2019 and later dismissed. The People filed a third petition on March 20, 2020. A bench warrant issued and T.L. self-surrendered on April 9, 2020.

On April 13, 2020, T.L. moved to dismiss the section 602 petition for lack of jurisdiction. He also filed a motion to modify and dismiss the section 602 petition pursuant to sections 778 and 782.

The juvenile court denied T.L.'s motion to dismiss the petition for lack of jurisdiction. After T.L. admitted counts 1 and 2 of the third probation violation petition, the court terminated the suitable placement order and placed him home on probation. His motion to modify and dismiss the section 602 petition pursuant to sections 778 and 782 was taken off calendar as moot.

## DISCUSSION

T.L. was 11 when he committed the 2015 offense. At that time, the juvenile court had jurisdiction of "any person who is under 18 years of age when he or she violates any law of this state . . . ." (Former § 602, subd. (a); *David C.*, *supra*, 53 Cal.App.5th at p. 518.) SB 439 amended section 602 to provide, with exceptions inapplicable here, that a minor is not within the

3

juvenile court's jurisdiction if under 12 years of age at the time of the offense.[3] (§ 602, subd. (a); *David C.*, at p. 518.)

T.L. argues that the change in section 602 was necessarily incorporated into his plea agreement, thereby nullifying the plea. It is true that changes in the law "apply even to a defendant who entered into a plea agreement," but only "*if* the Legislature intended the change to apply to that defendant." (*People v King* (2020) 52 Cal.App.5th 783, 793.) Thus, even if T.L.'s admission to the offense qualified as a negotiated plea agreement, he still must establish that the Legislature intended SB 439 to apply retroactively to his case. He has not met this burden.

In *In re Estrada* (1965) 63 Cal.2d 740, our Supreme Court held that "[w]hen the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper . . . . It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply." (*Id.* at p. 745.) This "*Estrada* rule rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not." (*People v. Conley* (2016) 63 Cal.4th 646, 657; see *People v. Esquivel* (2021) 11 Cal.5th 671, 676 (*Esquivel*); *David C., supra,* 53 Cal.App.5th at p. 519.)

---

[3] Section 602's ameliorative provisions are not applicable to murder and rape, sodomy, oral copulation or sexual penetration by force, violence, duress, menace, or fear of immediate and unlawful bodily injury. (*Id.*, subd. (b).)

4

*Estrada* involved the reduction in punishment for a specific offense. (See *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 308 (*Lara*).) In *Lara*, the Supreme Court applied the same rule to a specific class of individuals, namely juvenile offenders. (*Id.* at p. 308.) The Court determined *Estrada* retroactivity was applicable because "[t]he possibility of being treated as a juvenile in juvenile court -- where rehabilitation is the goal -- rather than being tried and sentenced as an adult can result in dramatically different and more lenient treatment" for that juvenile class. (*Lara*, at p. 303.) Accordingly, *Lara* applied the new law (Proposition 57) retroactively to every juvenile charged in adult court whose judgment was not final at the time Proposition 57 went into effect. (*Id.* at pp. 303-304.)

The parties agree SB 439 confers a potentially ameliorative benefit to a specified class of individuals, i.e., minors who committed certain criminal offenses while under the age of 12. In a factually similar case, *David C.* concluded SB 439 applies retroactively to nonfinal judgments based on *Estrada* and *Lara*. (*David C.*, *supra*, 53 Cal.App.5th at pp. 519-520.) Since the minor did not appeal the dispositional order declaring him a ward of the court, his judgment became final when the time to appeal that order expired. (*Id.* at p. 520.) The court explained: "Nothing in the plain language of section 602, as amended by Senate Bill No. 439, or the legislative materials related to the amendment, suggests the Legislature intended to annul charges that were adjudicated, and wardship determinations that were made and became final judgments, before the statutory amendment went into effect. Accordingly, [the] minor was not entitled to have the original charges and wardship determination dismissed." (*Ibid.*)

5

Here, T.L. admitted the offense alleged in the section 602 petition and did not appeal the November 15, 2017 dispositional order. As a result, his wardship determination was final by the time SB 439's amendment to section 602 went into effect on January 1, 2019. (See *David C.*, *supra*, 53 Cal.App.5th at pp. 519-520.) In the absence of a nonfinal judgment or appealable order, T.L. was not entitled to retroactive application of SB 439 and dismissal of his petition and wardship determination. (*David C.*, at p. 520.)

We are not persuaded that *People v McKenzie* (2020) 9 Cal.5th 40 (*McKenzie*) compels a different result. In that case, the Supreme Court considered "whether a convicted [adult] defendant who is placed on probation after imposition of sentence is suspended, and who does not timely appeal from the order granting probation, may take advantage of ameliorative statutory amendments that take effect during a later appeal from a judgment revoking probation and imposing sentence." (*Id.* at p. 43.) Although the time to appeal the order granting probation had lapsed, the Court determined the ameliorative statutory amendments applied retroactively because "when the revisions to [those amendments] took effect, defendant's '"criminal proceeding . . . ha[d] not yet reached final disposition in the highest court authorized to review it."' [Citations.]" (*Id.* at p. 45.)

The Court noted that the trial court's jurisdiction to impose a final judgment in a criminal action continues into and throughout a period of probation. Such jurisdiction expires only when the probation period ends. (*McKenzie*, *supra*, 9 Cal.5th at p. 47.) The defendant in *McKenzie* did not raise trial error but did challenge the subsequent revocation of his probation and imposition of sentence. The Court determined the defendant's

6

"failure to file . . . a direct appeal does not preclude him from taking advantage of ameliorative amendments that took effect while he was appealing from the subsequent revocation of his probation and imposition of sentence." (*Id.* at p. 50.)

Most recently, in *Esquivel*, *supra*, 11 Cal.5th 671, the Supreme Court reaffirmed *McKenzie's* holding that "[a] case in which a defendant is placed on probation with imposition of sentence suspended is not yet final for this purpose if the defendant may still timely obtain direct review of an order revoking probation and imposing sentence." (*Id.* at p. 673.) The Court then extended this rule to "a case in which a defendant is placed on probation with execution of an imposed state prison sentence suspended." (*Id.* at p. 673.) The Court held that such a case "is not yet final . . . if the defendant may still timely obtain direct review of an order revoking probation and causing the state prison sentence to take effect." (*Ibid*.)

T.L. contends *McKenzie* does not apply to juvenile proceedings. Even if we assume *McKenzie* does apply, it would not warrant a reversal in this case. *McKenzie* applies when an ameliorative amendment becomes effective while the defendant may still timely seek review of an order revoking probation and imposing sentence. Similarly, *Esquivel* applies when an ameliorative amendment becomes effective while the defendant may still timely seek review of an order revoking probation and causing a state prison sentence to take effect. Neither circumstance is present here. Nor is there an analogous circumstance that would support *McKenzie's* application.

A judgment is final at the "point at which the courts can no longer provide a remedy on direct review." (*In re Pine* (1977) 66 Cal.App.3d 593, 595.) SB 439 terminated, by operation of law,

7

juvenile court jurisdiction over *all* proceedings involving juveniles who were under 12 when they committed certain offenses. There is no indication SB 439 contemplated further review of any juvenile court judgments or orders since it divested the court of jurisdiction to enter, enforce or modify them. Indeed, it is difficult to imagine a more final scenario than one in which the juvenile court can take no further action.

## DISPOSITION

The order denying T.L.'s motion to dismiss the section 602 petition for lack of jurisdiction is affirmed insofar as the motion sought dismissal of all proceedings, including the adjudication of charges and wardship determination, occurring before January 1, 2019. The juvenile court is directed to prepare an order reflecting that jurisdiction terminated in this case, by operation of law, on January 1, 2019, and to transmit a certified copy of the order to the parties and the probation department.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

I concur:

GILBERT, P. J.

8

TANGEMAN, J., Concurring in the judgment:

T.L. advanced three contentions on appeal: (1) the ameliorative benefits of the amendment to Welfare and Institutions Code[1] section 602 set forth in Senate Bill No. 439 (Stats. 2018, ch. 1006, § 2) (S.B. 439) apply to his case because he was still on probation when the amendment took effect (see *People v. McKenzie* (2020) 9 Cal.5th 40, 44-51 (*McKenzie*)); (2) the juvenile court's jurisdiction over him expired on January 1, 2019, the effective date of the amendment; and (3) the amendment was incorporated into his plea agreement, thereby nullifying his plea due to lack of jurisdiction. The Attorney General concedes the second contention, but disputes the first and third. The majority rejects the first contention because it accepts the second— i.e., because the juvenile court lost jurisdiction over T.L. on January 1, 2019, he is ineligible for *McKenzie* relief, including the retroactive application of S.B. 439. (Maj. opn. *ante*, at pp. 6-8.) The majority rejects the third contention with the statement that T.L. "has not met [his] burden" to "establish that the Legislature intended S.B. 439 to apply retroactively to his case" (maj. opn. *ante*, at p. 4), without analysis or discussion of the cases on which T.L. relies.

I agree that T.L.'s reliance on *McKenzie* is misplaced. The parties and the court agree that S.B. 439 confers an ameliorative benefit on a minor in T.L.'s position. Under normal circumstances, such a benefit must be extended to

---

[1] Unlabeled statutory references are to the Welfare and Institutions Code.

one who remains subject to the imposition or execution of further punishment. (*In re Estrada* (1965) 63 Cal.2d 740, 744-745; see *People v. Esquivel* (2021) 11 Cal.5th 671, 677-680 [execution]; *McKenzie, supra*, 9 Cal.5th at pp. 44-51 [imposition].) Yet because the benefit conferred by S.B. 439 is complete—i.e., because a minor like T.L. is, effective January 1, 2019, no longer subject to further punishment—any additional ameliorative benefits S.B. 439 might provide are denied because the benefitted party can no longer enforce them. (Cf. *People v. Chavez* (2018) 4 Cal.5th 771, 777 [court generally cannot dismiss action once offender no longer subject to further punishment].)

But I do not believe this result is compelled in every case. "'Plea negotiations and agreements are an accepted and "integral component of the criminal justice system[,] and [are] essential to the expeditious and fair administration of our courts." [Citations.]'" (*K.R. v. Superior Court* (2017) 3 Cal.5th 295, 303.) They "'benefit that system by promoting speed, economy, and the finality of judgments.' [Citations.]" (*Ibid.*) The same is true in the juvenile context: "'Plea bargaining is a common feature in juvenile delinquency proceedings, just as it is in criminal proceedings in adult court.'" (*Ibid.*) "'Similar principles apply in both settings.' [Citations.]" (*Ibid.*)

"[A] negotiated plea agreement is a form of contract[,] and is interpreted according to general contract principles." (*Doe v. Harris* (2013) 57 Cal.4th 64, 69.) "[T]he Legislature, for the public good and in furtherance of public policy, and

2

subject to the limitations imposed by the federal and state [c]onstitutions, has the authority to modify or invalidate the terms of an agreement." (*Id.* at p. 70.) This means that a plea agreement "will be """deemed to incorporate and contemplate not only the existing law but [also] the reserve power of the state to amend the law or enact additional laws . . . .'" [Citation.]" (*Id.* at p. 66.) The parties' acceptance of the agreement "thus does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them." (*Ibid.*)

Unlike the majority, I am not convinced that the Legislature did not intend for S.B. 439 to apply retroactively to minors like T.L. During the debates on S.B. 439, the Legislature recognized that assault—the offense T.L. committed—was one of the most common offenses to bring minors under the juvenile court's jurisdiction. (Sen. Com. on Public Safety, Analysis of S.B. 439 (2017-2018 Reg. Sess.), Apr. 4, 2017, p. 3.) The Legislature also recognized that the juvenile justice system can do more harm than good. (*Id.* at pp. 4-5; see also Assem. Com. on Approp. Analysis of S.B. 439 (2017-2018 Reg. Sess.), June 27, 2018, p. 1.) Excluding minors under age 12 from contact with that system is thus "an important policy goal for the state of California." (Sen. Com. on Public Safety, Analysis of S.B. 439, *supra*, p. 2.) The expressed goal of "protect[ing] young children from the negative impacts of formal justice system involvement" (Assem. Floor Analysis of S.B. 439 (2017-2018 Reg. Sess.), Aug. 20, 2018, p. 2) would seem to evidence an intent to

3

apply S.B. 439 retroactively to minors like T.L., despite the lack of a specific retroactivity clause.

We need not decide that question here, however, because T.L. cites nothing in the record showing that his 2017 admission was the product of a negotiated plea. A minor's admission to an allegation in a section 602 petition is analogous to a guilty plea in an adult criminal proceeding. (*Ricki J. v. Superior Court* (2005) 128 Cal.App.4th 783, 791.) But a guilty plea can be open, i.e., without any promise made to the pleading party (*People v. Cuevas* (2008) 44 Cal.4th 374, 381, fn. 4), or can result from negotiations with prosecutors (*People v. Segura* (2008) 44 Cal.4th 921, 930-931). Here, T.L. has not shown that his admission was akin to the latter. He thus has not shown the existence of any agreement that would incorporate changes in the law that may retroactively apply to him. I concur in the court's judgment on this basis.

T.L. has, of course, received some benefit from the outcome of this case: the termination of the juvenile court's jurisdiction over him and the voiding of the orders entered after January 1, 2019. While undoubtedly welcome, those benefits are limited in effect and fail to provide the most consequential benefit of the new law: the right to be free from the stigma resulting from the true finding on the underlying section 602 petition. (*In re J.L.* (2008) 168 Cal.App.4th 43, 59 [referring to the "stigma of a finding that [a minor] violated a criminal law"]; see also *In re Winship* (1970) 397 U.S. 358, 367 [same].) In contrast to the

4

majority, I would be willing to revisit whether that benefit could be conferred on a minor in an appropriate case. Unfortunately for T.L., this is not that case.

NOT TO BE PUBLISHED.


TANGEMAN, J.

William A. Crowfoot, Judge
Superior Court County of Los Angeles

_____

Mary Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Blythe J. Leszkay and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.